2013 COA 78

Daryl MILLER, an individual, and Denver Police Protective Association, a Colorado non-profit corporation, Plaintiffs–Appellants,

v.

CITY AND COUNTY OF DENVER, Defendant–Appellee.

Court of Appeals No. 12CA0076

Colorado Court of Appeals, Div. III.

May 23, 2013

Bruno, Colin, Jewell & Lowe, P.C., David J. Bruno, Sean T. Olson, Denver, Colorado, for Plaintiffs–Appellants.

Douglas J. Friednash, City Attorney, Robert D. Nespor, Assistant City Attorney, Robert A. Wolf, Assistant City Attorney, Denver, Colorado, for Defendant–Appellee.

Opinion by JUDGE DAILEY

¶ 1 In this dispute over disability compensation, plaintiffs, Daryl Miller and the Denver Police Protective Association (DPPA), appeal the district court's summary judgment in favor of defendant, the City and County of Denver. We affirm.

## I. Background

¶ 2 On July 15, 2005, Miller, a lieutenant in the Denver Police Department, was injured in an automobile accident in the course and scope of his employment. As a result of his injuries, surgeries, and medical treatment associated with the accident, he did not work for five months. Thereafter, he worked intermittently, at his position or in modified work functions, for over four years.

¶ 3 Miller was entitled to disability benefits under the City Charter and the City's Collective Bargaining Agreement (CBA) with the DPPA. On March 8, 2010, the City determined that he had reached maximum medical improvement (MMI) with respect to his injuries.[1] Subsequently, the City informed him that, as of March 8, 2010, it had provided him 178.25 hours of full-salary paid leave in excess of the one year (or 2080 hours)[2] paid leave to which he was entitled under the CBA in connection with his injuries; and, therefore, it was deducting the excess 178.25 hours from his accumulated sick and saved vacation leave banks.

¶ 4 The DPPA filed a grievance under the CBA asserting that the City incorrectly discontinued giving Miller line-of-duty injury leave at full salary after one year. When the grievance was denied, Miller and the DPPA filed a complaint in Denver District Court seeking declaratory relief pursuant to sections 13–51–101 to –115, C.R.S. 2012, and C.R.C.P. 57. Subsequently, the parties filed cross-motions for summary judgment pursuant to C.R.C.P. 56.

---

1. MMI is a term defined under the Workers' Compensation Act, (WCA), § 8–40–201(11.5), C.R.S. 2012, associated with the receipt of temporary total and partial disability benefits. *See* §§ 8–42–105, 8–42–106, C.R.S. 2012. Because the WCA provides a floor, and not a ceiling, for benefits for injured workers, it should not be confused with benefits provided under the City Charter and the CBA.

2. The 2080 hours figure was apparently determined by multiplying the number of weeks in a year (52) times the number of hours in a conventional work week (40).

¶ 5 In their motion, Miller and the DPPA argued that the plain language of the Charter § 9.6.14 and Article 22.2 of the CBA afforded Miller two separate and distinct benefits. According to them,

(1) Section 9.6.14—providing "full pay for such time as [an officer is] 'temporarily incapacitated'"—operates until such time as an incapacity is resolved or is no longer temporary in nature; and

(2) Article 22.2 of the CBA—providing for one year of full-salary paid disability leave—operates only after an incapacity is determined to be permanent in nature (that is, when the officer has recovered to the point that no further treatment would be beneficial).

¶ 6 In contrast, the City argued that, properly interpreted, Article 22.2 of the CBA establishes an outside limit on the benefits awardable under Charter § 9.6.14.

¶ 7 The district court agreed with the City, based, in part, on (1) the plain language of the two provisions; (2) the history of the CBA negotiations, which adopted wholesale earlier, relevant Charter provisions; and (3) a holistic reading of the Charter and CBA provisions.[3] The court reasoned that the term "temporarily" used in section 9.6.14 must mean "lasting for a limited period of time" because any other reading of the term would render it meaningless; and that the one-year limit found in Article 22.2 for paid line-of-duty injury leave is a reasonable application of the term "temporary."

¶ 8 Based on this reasoning, the court granted the City's motion for summary judgment, finding as a matter of law, that (1) the benefits provisions contained in the Charter and the CBA create a one-year period of full pay for officers injured in the line-of-duty; and (2) Miller's one-year bank of paid line-of-duty injury leave expired on November 17, 2009.

## II. Analysis

¶ 9 Miller and the DPPA contend that the district court erred in granting the City's motion for summary judgment. We disagree, based, however, on an analysis different from that employed by the district court. See Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe, 107 P.3d 402, 406 (Colo.App. 2004) (a trial court's ruling may be affirmed based on any grounds that are supported by the record); Chryar v. Wolf, 21 P.3d 428, 431 (Colo.App.2000) (a judgment that reaches the correct result will be upheld on appeal even if the stated reasons for a trial court's ruling were erroneous).

¶ 10 "The purpose of the summary judgment 'is to permit the parties to pierce the formal allegations of the pleadings and save the time and expense connected with a trial when, as a matter of law, based on undisputed facts, one party could not prevail.'" Roberts v. Am. Family Mut. Ins. Co., 144 P.3d 546, 548 (Colo.2006) (quoting Mount Emmons Mining Co. v. Town of Crested Butte, 690 P.2d 231, 238 (Colo.1984)). Because summary judgment is a drastic remedy, however, it is appropriate only where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); Sanchez v. Moosburger, 187 P.3d 1185, 1187 (Colo.App. 2008).

¶ 11 We review a summary judgment ruling de novo. Brodeur v. Am. Home Assurance Co., 169 P.3d 139, 146 (Colo.2007).

■ ¶ 12 In the present case, the parties agree that there is no disputed issue of material fact and that the case turns solely on an interpretation of Charter § 9.6.14 and Article 22.2 of the CBA.

¶ 13 Denver Charter § 9.6.14 provides:

All members of the Police Department shall be entitled to and *shall receive full pay for such time as they may be temporarily incapacitated* from service on account of injuries received or sickness contracted while in the performance of their duties as members of said department, said allowance or pay to be approved by the Police Chief and the proper examining

---

**3.** The court also referenced, as a basis for its decision, "the historical application of line-of-duty benefits provided to Denver police officers." However, we find no evidence in the record of any "historical application of line-of-duty benefits" indicating that the Charter and CBA provisions operate together, rather than wholly separately from each other.

physician, they shall also be entitled to a vacation of fifteen days each year with full pay during such time.

(Emphasis added.)

¶ 14 Article 22.2 of the CBA states:

Any officer who shall become *so physically or mentally disabled* by reason of bodily injuries received in the discharge of the duties of the officer in the department that the *officer is rendered unable to perform duties in the department, shall be granted any necessary leave of absence not to exceed one (1) year at full salary* for the rank which the officer holds in the department, and shall be compensated from the regular police department payroll.

(Emphasis added.)

¶ 15 Ordinarily, because of their nature, we would have to construe these provisions using both statutory and contract construction principles. *See Cook v. City & Cnty. of Denver*, 68 P.3d 586, 588 (Colo.App.2003) ("The general rules of statutory construction apply to municipal charters."); *see also Teamsters Indus. Employees Welfare Fund v. Rolls–Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir.1993) (in construing a collective bargaining agreement, "traditional rules of contract interpretation apply when not inconsistent with federal labor law"). And in the event of a conflict between the two provisions, we would have to give priority to the Charter provision. *See* Denver Charter § 9.9.14(B) ("Whenever there is a conflict between the terms of the collective bargaining agreement and any provision of the Charter of the City and County of Denver [or] applicable City Ordinances ... the agreement [CBA] shall be deemed to be subordinate unless there is express violation of the terms of this Part 9."); *cf. Glenwood Post v. City of Glenwood Springs*, 731 P.2d 761, 762 (Colo.App.1986) ("The charter is effec-

tively [the City's] constitution, and ordinances may not conflict with the charter.").

¶ 16 However, because provisions substantially identical to section 9.6.14 and Article 22.2 were, at one time, both part of the City Charter,[4] and the parties agree that no change in meaning was effected when the one provision was removed from the Charter in 1995 and placed in the CBA, we construe the two provisions, using only statutory construction principles, to ascertain their original meaning (that is, to determine what they meant when they appeared together in the Charter).[5]

¶ 17 We interpret charter provisions according to their plain and ordinary meaning. *Cherry Creek Aviation, Inc. v. City of Steamboat Springs*, 958 P.2d 515, 519 (Colo.App.1998). Where charter language appears reasonably certain, plain, and unambiguous, resort to other rules of statutory construction is unnecessary. *Burns v. City Council*, 759 P.2d 748, 749–50 (Colo.App. 1988). If, however, "the [charter's] language does not clearly establish the meaning, or if the language is unclear because provisions are in conflict, then we must ascertain its meaning ... from extrinsic sources." *Cook*, 68 P.3d at 588.

¶ 18 "We construe charter provisions on the same subject matter together, which allows us to ascertain intent and avoid inconsistency." *Id.* We favor the interpretation allowing for consistency and avoid an interpretation that leads to an absurd or unreasonable result. *Id.*

¶ 19 Finally, "[w]hen a charter provision is susceptible of more than one interpretation, the interpretation suggested by the city's executive and legislative bodies is persuasive." *Id.*; *see Jones v. Denver Police*

---

**4.** The substantially identical text of Charter § 9.6.14 was enacted, as part of Denver's Charter, in 1904. *See* Denver City Charter art. XX, 308, sect. 162. The substantially identical text of Article 22.2 of the CBA was originally enacted as part of Denver's Charter in 1947, *see* Denver City Charter C5.41–1, and remained part of the charter until 1995. *See id.*

**5.** The choice of statutory, contract, or a blend of both types of analysis, is not wholly inconsequen-

tial. Different entities determine – based on different considerations—the meaning of ambiguous statutes and contracts. *Compare Cook*, 68 P.3d at 588 (courts determine the meaning of ambiguous charter provisions), *and* § 2–4–203, C.R.S.2012 (matters considered in resolving ambiguities in statutes), *with Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo.1996) (fact finders determine the meaning of ambiguous contract provisions; considerations discussed).

*Pension & Relief Bd.,* 801 P.2d 16, 18 (Colo. App.1990) (same); *see also Mile High Enters., Inc. v. Dee,* 192 Colo. 326, 330, 558 P.2d 568, 571 (1977) ("Were we to decide this case solely on the basis of our interpretation of what is written within the four corners of the above quoted charter provisions, and without any other guidelines, it is conceivable that we would affirm the district court. Removed from such circumscription, [however,] we give consideration to the interpretation of the executive and legislative divisions of Denver's government.").

¶ 20 Here, both section 9.6.14 and Article 22.2 relate to the same subject: disability benefits for police officers who become "incapacitated from service" or "unable to perform [his or her] duties" because of "injuries received" in the "performance" or "discharge" of his or her "duties." The one provision (section 9.6.14) awards the injured officer "full pay for such time as [he or she] is temporarily incapacitated"; the other (Article 22.2) awards "any necessary leave of absence not to exceed one year at his [or her] full salary."

¶ 21 We need not attempt, as the district court did, to interpret and apply the term "temporarily" to the facts of this case.[6] This follows because, unlike section 9.6.14, Article 22.2 makes no distinction between benefits for temporary and permanent disabilities. By interpreting Article 22.2 as granting benefits only in conjunction with permanent disabilities, Miller and the DPPA would have us impermissibly add the word "permanently" before the word "unable" in violation "of the well-established statutory construction rule that words omitted by the Legislature may not be supplied as a means of interpreting a statute." *McWreath v. Dep't of Pub. Welfare,* 26 A.3d 1251, 1258 (Pa.Commw.Ct.2011) (construing the unqualified term "disability"

as encompassing both temporary and permanent disability).

¶ 22 Because we can "not read into a statute an exception, limitation, or qualifier that its plain language does not suggest, warrant, or mandate," *People v. Sorrendino,* 37 P.3d 501, 504 (Colo.App.2001), we conclude that an injured officer is entitled to a maximum of one year disability leave at full salary, without regard to the temporary *or* permanent nature of his or her disability. *See* 1A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 20:22 (7th ed. 2007) ("When a statute announces a general rule and makes no exception to that rule, a court is ordinarily not authorized to create an exception or add a qualifying provision not intended by the lawmakers.").

¶ 23 Further, even if the two provisions were ambiguous, we would defer to the City's interpretation of the provisions, inasmuch as it produces a sensible result.

¶ 24 Miller and the DPPA assert, however, that the City's—and our—interpretation cannot be correct because of the language at the end of section 9.6.14 providing that injured officers "shall also be entitled to a vacation of fifteen days for each year with pay during such time [of temporary incapacity]." In their view, this language is "evidence that the benefits of [C]harter § 9.6.14 were intended to be without limitation in time." It does so, they assert, by explicitly recognizing that temporary incapacitation benefits accrue even if the period of recovery is greater than one year.

¶ 25 We reject Miller and the DPPA's assertion because, as evidenced by the facts of this case and our prior case law, an officer's one year of full-salary disability leave does not have to be used within a particular 365-day period but may be spread over multiple

---

6. We note, however, " 'Temporarily' is usually defined in dictionaries and decisions as not permanent, for a limited time only, not of long duration, transitory. Its most common antonym is permanently. It is generally regarded as a relative and comparative term."*Worthington v. McDonald,* 246 Iowa 466, 68 N.W.2d 89, 92 (1955); see *Prudential Ins. Co. v. Litzke,* 179 A. 492, 495 (Del.Super.Ct.1934) (" 'Permanently disabled' is the antithesis of 'temporarily disabled' for 'permanent' is the direct antonym of

'temporary.' 'Permanently disabled' means a present disability which has every indication of continuing indefinitely as to time and as to which there is no present reasonable and apparent probability of future recovery."); *see also Black's Law Dictionary* 1602 (9th ed. 2009) (defining "temporarily" as "[t]hat which is to last for a limited time only, as distinguished from that which is perpetual, or indefinite, in its duration").

years. *See Jones,* 801 P.2d at 17; *see also Eason v. City of Riverside,* 233 Cal.App.2d 190, 43 Cal.Rptr. 408, 410 (1965) (construing "leave of absence ... not exceeding one year" to encompass a cumulative total of 52 weeks of disability, not a year of continuous disability; reasoning that "fair play and logic impel the conclusion that an injured employee who works between intervals of disability should not be penalized by having such periods of employment charged against his right to compensation resulting from temporary disability").

¶ 26 Our decision here does not produce a harsh result. Under the CBA, an injured officer is also eligible for benefits lasting longer than one year, just not full-salary leave. *See* CBA Article 22.3 ("Should such officer need additional leave of absence in excess of one (1) year, the officer may use accumulated sick leave and should the officer still need additional leave of absence, the officer may be granted additional leave of absence at one-half of the salary for the rank the officer holds in the department, to be paid from the 'pension and relief fund'; provided, however, that should such officer be eligible for retirement on a pension, the officer shall not be entitled to receive such additional disability leave, but instead shall be retired from active service at the expiration of one (1) year's leave of absence and accumulated sick leave."). He or she may also be eligible for benefits under the WCA.

¶ 27 Because the record discloses that Miller received 178.25 hours above his allocated full-salary disability leave, the district court properly determined, as a matter of law, that the City was entitled to deduct his excess disability leave from his other accrued leave time.

¶ 28 The judgment is affirmed.

JUDGE BOORAS concurs.

JUDGE FURMAN dissents.

JUDGE FURMAN dissenting.

¶ 29 I agree with the majority that the two provisions at issue in this case should be analyzed according to statutory construction principles to determine what they meant when they appeared together in the City Charter. I disagree, however, that doing so leads to the conclusion "that an injured officer is entitled to a maximum of one year disability leave at full salary, without regard to the temporary *or* permanent nature of his or her disability." In my view, section 9.6.14 and Article 22.2 cover different circumstances and provide for separate and distinct benefits to Denver Police Officers. Accordingly, I respectfully dissent.

¶ 30 The majority's conclusion that the temporary or permanent nature of an officer's injury is irrelevant to the disability benefit due is premised on the canon of statutory construction that reviewing courts may not add words to a statute as a means of interpretation. *See Turbyne v. People,* 151 P.3d 563, 567 (Colo.2007). Equally true, however, is the maxim that we may not subtract words from a statute, but instead should give effect to all words and phrases used and avoid interpretations that render statutory terms superfluous. *Id.*; *Welby Gardens v. Adams County Bd. of Equalization,* 71 P.3d 992, 995 (Colo.2003). In light of these principles, I conclude section 9.6.14 and Article 22.2 cover different circumstances depending on the nature of the officer's injury and, therefore, provide separate and distinct benefits. The plain language of each provision supports my conclusion.

¶ 31 Denver Charter section 9.6.14 provides:

All members of the Police Department shall be entitled to and shall receive full pay for such time as they may be temporarily incapacitated from service on account of injuries received or sickness contracted while in the performance of their duties as members of said department, said allowance or pay to be approved by the Police Chief and the proper examining physician, they shall also be entitled to a vacation of fifteen days each year with full pay during such time.

¶ 32 Use of the phrase "temporarily incapacitated from service," to describe the nature of the line-of-duty injury covered under section 9.6.14, is not ambiguous. "Temporarily" means "for a brief period" or "during a limited time." *Webster's Third New Inter-*

*national Dictionary* 2353 (2002). Thus, section 9.6.14 addresses an officer who is incapacitated from service for a brief period of time, suggesting it is designed to provide benefits of "full pay" and accrued vacation time "of fifteen days each year" while the officer undergoes a period of recovery before returning to work. This language also envisions that the period of recovery may last longer than one year, suggesting the benefits may extend as long.

¶ 33 Article 22.2 of the CBA, on the other hand, provides:

> Any officer who shall become so physically or mentally disabled by reason of bodily injuries received in the discharge of the duties of the officer in the department that the officer is rendered unable to perform duties in the department, shall be granted any necessary leave of absence not to exceed one (1) year at full salary for the rank which the officer holds in the department, and shall be compensated from the regular police department payroll.

¶ 34 Use of the phrase "so physically or mentally disabled ... that the officer is rendered unable to perform duties in the department" under Article 22.2, by its plain language, does not contain a temporal qualifier, suggesting it is designed to provide only limited "salary" benefits for a period "not to exceed one (1) year" to officers who will not be returning to work.

¶ 35 Accordingly, by giving effect to all the words and phrases in both provisions, I cannot support an interpretation that these provisions afford one benefit which does not turn on the temporary nature of the injury. Indeed, when considered as two distinct benefits, the differences in the two provisions make sense.

¶ 36 Moreover, other differences in these provisions suggest they apply to different circumstances. For example, section 9.6.14 requires the benefits administered to be approved by the Police Chief and the examining physician. Article 22.2, which does not require separate bureaucratic or medical approval, requires the officer to be paid from the regular police department payroll.

¶ 37 In sum, I conclude there is nothing in the plain language of section 9.6.14, Article 22.2, or any other provisions in the Charter or CBA, that indicates the one-year limit in Article 22.2 was intended to define or limit the term "temporarily" in section 9.6.14, as the district court concluded. Thus, I conclude the district court erred in finding as a matter of law that a one-year limit was a reasonable interpretation of the term "temporary." Because I conclude the two provisions cover different circumstances and provide separate and distinct benefits, I would reverse the district court's grant of summary judgment. While it appears the parties do not dispute that Miller's injury was temporary in nature, I would remand to the district court to determine the nature of his injury and, accordingly, which provision supplies the benefit Miller received.