The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 25, 2018

## 2018COA9

## No. 16CA2104, Airth v. Zurich Am. Ins. Co. — Insurance — Motor Vehicles — Uninsured/Underinsured

A division of the court of appeals considers whether, under section 10-4-609, C.R.S. 2017, (1) an insurer's statutorily mandated offer of enhanced uninsured/underinsured motorist (UM/UIM) coverage was, as a matter of law, sufficient; and (2) an insured must reject in writing an offer of enhanced UM/UIM coverage.

The division concludes that the offer was, as a matter of law, sufficient, even though it did not include any pricing information. And, interpreting section 10-4-609, the division concludes that a written rejection is only required if the insured declines the statutory minimum amount of UM/UIM coverage; a written rejection of enhanced UM/UIM coverage is not, then, required.

Accordingly, the division affirms summary judgment entered on behalf of the insurer.

COLORADO COURT OF APPEALS                                    **2018COA9**

---

Court of Appeals No. 16CA2104
City and County of Denver District Court No. 16CV30510
Honorable Jay S. Grant, Judge

---

Rickey Airth,

Plaintiff-Appellant,

v.

Zurich American Insurance Company, an Illinois corporation,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE DAILEY
Hawthorne and Welling, JJ., concur

Announced January 25, 2018

---

Law Firm of William Babich, LLC, William Babich, Denver, Colorado, for
Plaintiff-Appellant

Spies, Powers & Robinson, P.C., Jack D. Robinson, Ursula J. Honigman,
Denver, Colorado, for Defendant-Appellee

¶ 1	In this claim for uninsured/underinsured motorist (UM/UIM) benefits, plaintiff, Rickey Airth, appeals the district court's entry of summary judgment in favor of defendant, Zurich American Insurance Company (Zurich).  We affirm.

## I.	Background

¶ 2	Airth was seriously injured in an accident while operating a semitruck owned by his employer, Sole Transport LLC, doing business as Solar Transport Company (Solar).  He had been struck by a negligent, uninsured driver.

¶ 3	Solar had UM/UIM insurance coverage of $50,000 for its employees through a policy issued by Zurich.

¶ 4	Airth brought a claim for declaratory relief seeking to reform Solar's policy to provide UM/UIM coverage of $1,000,000.  He alleged in his complaint that he was entitled to the higher amount of coverage because Zurich had failed, as required by section 10-4-609, C.R.S. 2017, to (1) offer Solar UM/UIM coverage in an amount equal to its bodily injury liability coverage (i.e., $1,000,000) and (2) produce a written rejection by Solar of such an offer of UM/UIM coverage.

1

¶ 5     On cross-motions for summary judgment, the district court

entered judgment for Zurich, ruling, as a matter of law, that

- Zurich's documents "put [Solar] on notice sufficient so

  that [it] could make an intelligent decision in opting to

  not obtain more coverage, and satisfied [Zurich's] duty to

  offer coverage to Solar,"[1] and adequately offered Solar

  UM/UIM coverage in an amount equal to the bodily

  injury liability limits of the policy; and

- "[t]here is no requirement that the rejection of UM/UIM

  limits in an amount equal to liability limits must be in

  writing."

¶ 6     On appeal, Airth contends that the district court's rulings on

both issues were incorrect, and that the court therefore erred in

granting Zurich's motion for summary judgment and denying his

cross-motion.[2]

---

[1] Although the court actually stated this conclusion in terms of
Zurich putting "Plaintiff" on notice, this was an obvious scrivener's
error: Solar, not Airth, had purchased the policy at issue here.

[2] Although the denial of summary judgment is usually not
appealable, *Moss v. Members of Colo. Wildlife Comm'n,* 250 P.3d
739, 742 (Colo. App. 2010), it is appealable when it effectively puts
an end to the litigation, as when cross-motions result in entry of

## II. Analysis

¶ 7     Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Geiger v. Am. Standard Ins. Co. of Wis.*, 192 P.3d 480, 482 (Colo. App. 2008). We review a grant or denial of summary judgment de novo. *Id.*

¶ 8     The "offer" and "rejection" issues presented on appeal turn on either an application or interpretation of subsections 10-4-609(1)(a) and (2), the texts of which are set forth in Appendix A to this opinion.

¶ 9     Subsection 10-4-609(1)(a) prohibits an insurer from issuing an automobile liability policy unless a minimum amount of UM/UIM coverage is included in the policy, except where the named insured rejects UM/UIM coverage in writing.[3] Subsection 10-4-609(2) requires an insurer, "[b]efore the policy is issued or renewed," to

---

judgment for one party and a denial for the other, *Glennon Heights, Inc. v. Cent. Bank & Tr.*, 658 P.2d 872, 875 (Colo. 1983); *Mahaney v. City of Englewood*, 226 P.3d 1214, 1217 (Colo. App. 2009).

[3] Section 42-7-103(2), C.R.S. 2017, to which subsection 10-4-609(1)(a), C.R.S. 2017, expressly refers, defines this minimum amount, exclusive of interests and costs, as not less than $25,000 per person and $50,000 per accident.

"offer the named insured the right to obtain uninsured motorist coverage in an amount equal to the insured's bodily injury liability limits, but in no event shall the insurer be required to offer limits higher than the insured's bodily injury liability limits."

### A.    Facts

¶ 10     The facts are undisputed.

¶ 11     Prior to the renewal of Solar's policy, Zurich sent Solar correspondence along with a package of documents pertaining to Solar's rights related to UM/UIM coverage under the laws of all fifty states.  A person representing himself as Solar's counsel expressly affirmed that he had read all of the documents.[4]

¶ 12     One of the documents was titled in this manner:

**REJECTION OF UNINSURED MOTORISTS COVERAGE**

**OR SELECTION OF LIMITS**

**(Colorado)**

---

[4] Counsel attested with his signature to the following declaration:

> I acknowledge that I have reviewed each individual state's selection/rejection form, I have made the elections indicated and that I have the authority to sign this form on behalf of all named Insureds on those policies listed above.

¶ 13    The first three paragraphs of that document provided:

> Colorado law permits you, the insured named in the policy, to reject the Uninsured motorists Coverage for bodily injury or to select a limit for such coverage higher than the required minimum financial responsibility limit, $25,000 each person/$50,000 each accident ($50,000 each accident if written on a single limit basis) equal to the limit for Bodily Injury Coverage in the policy.  Uninsured Motorists coverage for bodily injury provides insurance for the protection of persons insured under the policy who are legally entitled to recover damages from the owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.
>
> Bodily Injury Uninsured Motorists coverage includes coverage for damage or bodily injury that an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle.  An underinsured motor vehicle is a vehicle which is insured or bonded for bodily injury or death at the time of the accident.
>
> If you reject the Uninsured Motorists Coverage or wish to select the limit for Bodily Injury Coverage in your policy to apply to Uninsured Motorists Coverage, such should be indicated below by marking the appropriate box.

¶ 14    No box was marked rejecting UM/UIM coverage or selecting a higher than minimum level of UM/UIM coverage.

## B. *Zurich's Offer*

¶ 15      Airth directs our attention to the fact that nowhere in the documents did Zurich provide Solar with a premium quote or even some way to estimate the premium that Solar would have to pay in the event it wished to purchase UM/UIM coverage commensurate with its bodily injury liability limit of $1,000,000.  Zurich's documents could not, he insists, constitute an "offer" of the ability to obtain higher UM/UIM coverage without reference to the price for which this higher coverage could be obtained.

¶ 16      Airth's position would prevail if we were applying the meaning of the term "offer" as it is used in contract law.  *See Melendez v. Hallmark Ins. Co.,* 305 P.3d 392, 393 (Ariz. Ct. App. 2013) ("[T]he offer did not comply with the statute because it did not include any information about any premium for UM and UIM coverage and thus could not create a binding contract if Melendez had accepted such coverage."); *see generally* Restatement (Second) of Contracts § 24 (Am. Law Inst. 1981) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.").

¶ 17    But the Colorado Supreme Court has attributed a somewhat

different meaning to the term "offer" as it is used in section 10-4-

609.  In *Allstate Insurance Co. v. Parfrey*, 830 P.2d 905 (Colo. 1992),

the supreme court, applying an earlier version of section 10-4-

609(2),[5] held as follows:

> In keeping with the legislative purpose of
> UM/UIM coverage to protect a person
> against the risk of inadequate
> compensation for injuries and damages
> caused by an uninsured or underinsured
> motorist, . . . an insurer's duty of
> notification and offer must be performed in

---

[5] Under that earlier version, the insurer was required to

> offer the named insured the right to obtain
> higher limits of uninsured motorist coverage in
> accordance with its rating plan and rules, but
> in no event shall the insurer be required to
> provide limits higher than the insured's bodily
> injury liability limits or one hundred thousand
> dollars per person and three hundred
> thousand dollars per accident, whichever is
> less.

§ 10-4-609(2), C.R.S. 1987.

Contrary to Airth's assertion, the substantive effect of the earlier
and current versions of section 10-4-609(2) are the same: to ensure
that insureds can, if they wish, obtain more than the minimum
required UM/UIM coverage.  The only difference between the earlier
and current versions of the statute is the formula for determining
the maximum amount of coverage an insurer must make available
to its insureds.

a manner reasonably calculated to permit the potential purchaser to make an informed decision on whether to purchase UM/UIM coverage higher than the minimum statutory liability limits of $25,000 per person and $50,000 per accident.

In determining whether an insurer has fulfilled its statutory duty, a court may appropriately consider such factors as the clarity with which the purpose of UM/UIM coverage was explained to the insured, whether the explanation was made orally or in writing, the specificity of the options made known to the insured, the price at which the different levels of UM/UIM coverage could be purchased, and any other circumstances bearing on the adequacy and clarity of the notification and offer. . . . In the final analysis, the determination of the insurer's discharge of its statutory duty to notify the insured of the availability of higher UM/UIM coverage and to offer such coverage to the insured must be resolved under the totality of circumstances.

*Id.* at 913; *see also id.* at 914 n.5 ("[T]he dispositive consideration is whether, under the totality of circumstances, the insurer's notification and offer to the insured adequately informed the insured that UM/UIM coverage was available" in accordance with the requirements of the statute.).

8

¶ 18    Because, under a *Parfrey* analysis, no one factor is dispositive, *see Jewett v. Am. Standard Ins. Co. of Wis.*, 178 P.3d 1235, 1239 (Colo. App. 2007) (applying *Parfrey* in analyzing offers of personal injury protection (PIP) benefits); *Munger v. Farmers Ins. Exch.*, 174 P.3d 832, 832–37 (Colo. App. 2007) (same), Zurich's failure to provide Solar with a stated premium (or formula for determining the premium) for optional, enhanced UM/UIM coverage does not in and of itself render Zurich's "offer" insufficient under the statute. *See Gov't Emps. Ins. Co. v. Graham-Gonzalez*, 107 P.3d 279, 287 (Alaska 2005) ("The purpose of [the "offer" statute] is to give insureds various options with respect to UIM coverage: to select coverage with limits mirroring their liability limits, or with different limits, or to waive coverage altogether. This purpose is not frustrated by interpreting the subsection as not requiring premium quotes to be included in application forms. Insureds can be expected to ask for the prices of coverage they are interested in."); *see also Johnson v. State Farm Mut. Auto. Ins. Co.*, 158 F. App'x 119, 122 (10th Cir. 2005) ("Although the lack of a discussion of the price of enhanced PIP insurance is an important factor under the *Parfrey* analysis, State Farm's failure to inform [the insured] about the specific cost

9

does not in itself render the offer commercially unreasonable. . . . Had [the insured] been at all interested in purchasing enhanced PIP coverage . . . , it would have been easy for him to determine the price at which he could purchase the coverage.").[6]

¶ 19     Applying the other *Parfrey* factors here, we see that Zurich, through its aforementioned Colorado-specific "Rejection of Uninsured Motorists Coverage or Selection of Limits" document, explained, in writing, the purpose of UM/UIM coverage in clear and understandable terms; and (in the very first sentence) Zurich notified Solar that it was permitted to select a UM/UIM coverage "higher than the required minimum financial responsibility limit, $25,000 each person/$50,000 each accident . . . [and] equal to the limit for Bodily Injury Coverage in the policy."  Given the stand-alone nature of the document and the prominent position of the required information (i.e., in the document's first sentence), we conclude that reasonable people would not disagree that Zurich had complied with its statutory obligations under subsection 10-4-609(2).  Zurich's notification and offer to Solar adequately informed

---

[6] Should the General Assembly disagree with this conclusion, it is, of course, free to amend subsection 10-4-609(2) as it sees fit.

Solar that UM/UIM coverage was available in accordance with the requirements of the statute. *See Johnson*, 158 F. App'x at 122 (affirming summary judgment despite the lack of any discussion about the price of enhanced PIP coverage, where the insured was adequately informed of her right to purchase additional PIP coverage).[7]

¶ 20　　In so concluding, we necessarily reject Airth's arguments that the offer was insufficient because the form was buried within numerous other pages of material and that the offer of equal

_____

[7] Airth's reliance on *Munger v. Farmers Insurance Exchange*, 174 P.3d 832 (Colo. App. 2007), for a contrary conclusion is misplaced. In *Munger*,

> [t]he written information [the insured] received from [the insurer] regarding the availability of enhanced PIP coverage consisted of the following: (1) a statement at the bottom of [the insurer's] Renewal Premium Notice stating: "A change in Colorado law has revised No–Fault–personal injury protection. If you wish to buy up to $200,000 protection, please contact your [insurance] agent today"; and (2) a statement in [the insurer's] "Auto Insurance Program Summary" that "Optional personal injury protection coverages also are available."

*Id.* at 835. The quantity and quality of the type of information supplied to the insured here by Zurich distinguishes this case from *Munger*.

11

coverage was in the fine print. Neither the explanation of the purposes of UM/UIM coverage nor the notification and offer of enhanced UM/UIM coverage is buried in fine print; indeed the notification and offer are in the very first sentence of the Colorado-specific document, and the purposes of UM/UIM coverage are explained soon thereafter.

¶ 21    We also reject Airth's assertion that Zurich was not entitled to summary judgment because there is no evidence that anyone from Solar read or, perhaps more importantly, understood the document. Airth overlooks the attestation of Solar's counsel that he had read all of the documents supplied by Zurich. And we agree with the Tenth Circuit Court of Appeals' observation that "*Parfrey* . . . suggests that we look to the objective reasonableness of [the insurer's] offer, not the potential purchaser's subjective understanding. Indeed, none of the factors identified by the *Parfrey* court mention whether the insured actually understood the insurer's offer of coverage." *Reid v. Geico Gen. Ins. Co.*, 499 F.3d 1163, 1169 (10th Cir. 2007).

¶ 22    Finally, we reject Airth's argument that reversal is required because the documents that were signed are dated a month after

the policy went into effect. "[T]he operative question is not whether [coverage was] initially offered or explained in writing before the initial purchase of a policy, but rather, it is whether the insurer provided the insured with the opportunity to purchase statutorily-compliant [coverage] before the insured needed [it]." *Jewett*, 178 P.3d at 1237-38 (discussing analogous PIP coverage). The record reflects that Solar had received and responded to the notification and offer here *before* the accident that injured Airth. Airth cannot avoid the choices Solar made before that time. *See id.*; *see also Reid*, 499 F.3d at 1169 (holding that any failure to provide its insured with written offer of enhanced PIP coverage prior to issuance of the policy, as was required by section 10-4-706(4)(a), C.R.S. 1999 (repealed 2003), was cured "long before [the plaintiff] had her accident").

### C.     No Written Rejection of Additional UM/UIM Coverage Was Required

¶ 23     In granting Zurich's motion for summary judgment, the district court determined that a written rejection of coverage was required only with respect to the minimum UM/UIM coverage

available under subsection 10-4-609(1) and not to the additional UM/UIM coverage available under subsection 10-4-609(2).

¶ 24    The resolution of this issue requires us to interpret the provisions of section 10-4-609.

¶ 25    Statutory interpretation presents a question of law, which we review de novo. *Town of Telluride v. San Miguel Valley Corp.*, 197 P.3d 261, 262 (Colo. App. 2008).

¶ 26    When interpreting a statute, "a court must ascertain and give effect to the intent of the General Assembly and refrain from rendering a judgment that is inconsistent with that intent." *Trappers Lake Lodge & Resort, LLC v. Colo. Dep't of Revenue*, 179 P.3d 198, 199 (Colo. App. 2007). To determine legislative intent, we first look to the words of the statute, *id.*, and give effect to their common meanings. *Bd. of Cty. Comm'rs v. Roberts*, 159 P.3d 800, 804 (Colo. App. 2006). If those words are clear and unambiguous in import, we apply the statute as written. *Trappers Lake Lodge*, 179 P.3d at 199.

¶ 27    "The legislative choice of language may be concluded to be a deliberate one calculated to obtain the result dictated by the plain meaning of the words." *Hendricks v. People*, 10 P.3d 1231, 1238

14

(Colo. 2000) (quoting *City & Cty. of Denver v. Gallegos*, 916 P.2d 509, 512 (Colo. 1996)). Consequently, "[w]hen the General Assembly includes a provision in one section of a statute, but excludes the same provision from another section, we presume that the General Assembly did so purposefully." *Well Augmentation Subdistrict of Cent. Colo. Water Conservancy Dist. v. City of Aurora*, 221 P.3d 399, 419 (Colo. 2009); *accord United States v. Pauler*, 857 F.3d 1073, 1076 (10th Cir. 2017) (Where the legislature "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [it] acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))).

¶ 28     Here, the only statutory reference to a rejection in writing of UM/UIM coverage appears in subsection 10-4-609(1), which addresses only the minimum amount of UM/UIM coverage that must be provided by the insurer. There is no similar provision requiring a written rejection in subsection 10-4-609(2), which addresses the subject of additional UM/UIM coverage. Because "words omitted by the Legislature may not be supplied as a means

15

of interpreting a statute," *Miller v. City & Cty. of Denver*, 2013 COA 78, ¶ 21 (quoting *McWreath v. Dep't of Pub. Welfare*, 26 A.3d 1251, 1258 (Pa. Commw. Ct. 2011)), we, like the district court, conclude that a written rejection is required only if the insured declines the minimum amount of UM/UIM coverage, which was not the case here. *See Pacheco v. Shelter Mut. Ins. Co.*, 583 F.3d 735, 741 (10th Cir. 2009) (concluding, after applying Colorado law, that "written rejection of coverage is only required if the insured declines UM/UIM coverage entirely, which is not the case here").[8]

¶ 29    Therefore we determine that, as matter of law, Airth was not entitled to summary judgment and that, as a matter of law, Zurich was entitled to summary judgment.

### III.    Conclusion

¶ 30    The judgment is affirmed.

---

[8] We reject Airth's assertion that *Pacheco* is inapposite because it dealt with a predecessor version of section 10-4-609. As with the current statute, the predecessor version had a "written rejection" of coverage requirement only in subsection (1), which dealt with minimum UM/UIM coverage. And, as noted in footnote five, the predecessor version of subsection (2) differed from the present one only in formulating the amount of additional UM/UIM coverage that an insurer had to offer its insured. For purposes of determining the applicability of a "written rejection" requirement, the difference between the predecessor and current versions of subsection (2) is immaterial.

JUDGE HAWTHORNE and JUDGE WELLING concur.

## APPENDIX A

As pertinent here, section 10-4-609, C.R.S. 2017 provides:

(1)(a) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 42-7-103(2), C.R.S., under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; except that the named insured may reject such coverage in writing.

. . . .

(2) Before the policy is issued or renewed, the insurer shall offer the named insured the right to obtain uninsured motorist coverage in an amount equal to the insured's bodily injury liability limits, but in no event shall the insurer be required to offer limits higher than the insured's bodily injury liability limits.

. . . .

18

(4) Uninsured motorist coverage shall include coverage for damage for bodily injury or death that an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle, the ownership, maintenance, or use of which is insured or bonded for bodily injury or death at the time of the accident.