25CA1092 Peo in Interest of MMB 02-12-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1092
Pueblo County District Court No. 23JV30443
Honorable William D. Alexander, Judge

The People of the State of Colorado,

Appellee,

In the Interest of M.M.B., A.R.B., Jr., and R.B., Children,

and Concerning A.B.,

Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE SCHOCK
Grove and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

Cynthia Mitchell, County Attorney, David A. Roth, Special Assistant County Attorney, Pueblo, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant

¶ 1    A.B. (father) appeals the judgment terminating his parent-child legal relationships with M.M.B., A.R.B., Jr., and R.B. (the children).  He argues that the juvenile court did not adopt a treatment plan for him and that the court erred by failing to consider an allocation of parental responsibilities (APR) as a less drastic alternative to termination of his parental rights.  We affirm.

## I.    Background

¶ 2    The Pueblo County Department of Human Services filed a petition in dependency and neglect alleging that R.B. had been born exposed to drugs and that both parents had experienced drug dependence.  A caseworker filed a proposed treatment plan for the parents in January 2024.  The juvenile court held a hearing in July 2024 and adjudicated the children dependent and neglected.

¶ 3    At the end of the July 2024 hearing, the court said it was "just kind of putting together a treatment plan that [it thought was] appropriate under the circumstances."  It then identified several conditions that it expected the parents to satisfy "before [it] could return custody of the children to them."  Specifically, the parents would need to (1) stay in touch with the Department; (2) maintain a safe and stable home; (3) obtain employment or another source of

financial support; (4) be substance-free, as verified through random drug testing; (5) complete substance abuse and mental health evaluations and comply with any recommendations; and (6) attend visits with the children and a parenting class. These requirements were substantially similar to the objectives in the Department's January 2024 proposed treatment plan. The court entered a written adjudicatory and dispositional order on October 8, 2024, approving and adopting the Department's proposed treatment plan.

¶ 4 The Department later moved to terminate the parents' legal relationships with the children. After a hearing, the court granted the motion and terminated father's and mother's parental rights.

## II. Applicable Law and Standard of Review

¶ 5 A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan, or the treatment plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 6 Whether a juvenile court properly terminated parental rights is a mixed question of fact and law because it involves the application of the termination statute to evidentiary facts. *People in Interest of L.M.*, 2018 COA 57M, ¶ 17. We review the court's factual findings for clear error, and we review de novo its legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

### III. Treatment Plan

¶ 7 Father argues that the juvenile court erred by terminating his parental rights without adopting a treatment plan. We disagree.

¶ 8 The juvenile court found that a treatment plan had been adopted at the July 2024 hearing. At that hearing, the court said it was "putting together a treatment plan that [it thought was] appropriate." It then listed the components of that plan.

¶ 9 Father contends that this oral recitation was inadequate because the treatment plan must be submitted by the caseworker for the court's approval, rather than crafted by the juvenile court. *See* § 19-3-508(e)(I), C.R.S. 2025. But a caseworker had submitted a substantially similar treatment plan six months earlier. Father does not identify any material differences between the plan the

caseworker submitted and the plan the court orally adopted. Nor did he object to the court's procedures or the contents of the plan.

¶ 10     Father also asserts that the treatment plan described by the juvenile court at the hearing was not "formally adopted" because the court "noted it was only the adjudication." But the court's closing comment of "that addresses adjudication" immediately followed its recitation of the treatment plan it "put[] together." Nothing in that comment suggests that the court meant to retract the treatment plan it had just described. To the contrary, the juvenile court may address adjudication and disposition at the same hearing, as the court did here. *See* § 19-1-103(58), C.R.S. 2025; § 19-3-508(1). And while it may have been better practice to gather input from each party before adopting the treatment plan, we reiterate that father — who was absent from the hearing but represented by counsel — did not object to the court's procedure.

¶ 11     Moreover, the court later entered a written dispositional order adopting the Department's proposed treatment plan, which, again, was consistent with its oral order at the July 2024 hearing. Father contends that this order was inadequate because the court's adoption of the plan was not "discussed on the record." But

4

although the court did not explicitly refer to the Department's proposed treatment plan at the July 2024 hearing, it effectively addressed the substance of that plan by adopting provisions consistent with it. Father does not cite any authority requiring the court to discuss the Department's proposed plan "on the record" — particularly in the absence of any objection — and he did not object to the written order adopting that plan. Nor did he ever assert at the termination hearing that no treatment plan had been adopted.

¶ 12 Finally, father never indicated, nor does he do so on appeal, that he did not understand what his treatment plan required. Thus, any purported deficiencies in the timing or form of that order would be harmless. *See* C.A.R. 35(c) ("The appellate court may disregard any error or defect not affecting the substantial rights of the parties."); *People in Interest of R.J.*, 2019 COA 109, ¶ 22 ("[A]n error affects a substantial right only if 'it can be said with fair assurance that it substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.'" (emphasis omitted) (citation omitted)).

## IV. Less Drastic Alternative

¶ 13 Father next argues that the juvenile court did not make sufficient findings that there was not a less drastic alternative to termination of his parental rights — specifically, an APR to the children's maternal great-grandmother. We are not persuaded.

### A. Applicable Law and Standard of Review

¶ 14 Before terminating parental rights, the juvenile court must consider and eliminate less drastic alternatives. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 40. In doing so, it must give primary consideration to the children's physical, mental, and emotional conditions and needs. *People in Interest of Z.M.*, 2020 COA 3M, ¶ 29. The court may consider, among other things, (1) whether an ongoing relationship with the parent would benefit the children, *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011); (2) whether the children are bonded to the parent, *People in Interest of D.P.*, 181 P.3d 403, 408-09 (Colo. App. 2008); and (3) whether the alternative placement option favors adoption rather than an APR, *People in Interest of S.N-V.*, 300 P.3d 911, 920 (Colo. App. 2011).

¶ 15 A less drastic alternative is not viable simply because it is "adequate." *A.M.*, ¶ 27. It must be in the child's best interests. *Id.*

Long-term or permanent placement with a family member, short of termination, may not be in a child's best interests if it does not provide the permanence assured by adoption or otherwise meet the child's needs. *People in Interest of A.R.*, 2012 COA 195M, ¶ 41.

¶ 16    We review the juvenile court's less drastic alternatives findings for clear error. *People in Interest of E.W.*, 2022 COA 12, ¶ 34, *aff'd*, 2022 CO 51. Thus, if the juvenile court considers a less drastic alternative but finds instead that termination is in the child's best interests, we must affirm that decision if the court's findings have record support. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

### B.    Analysis

¶ 17    The juvenile court found that termination of father's parental rights was in the children's best interests. After the court's oral ruling, father's counsel asked for a specific ruling regarding less drastic alternatives. The court declined to make any further findings, explaining that "the findings [it] made were adequate." But it went on to elaborate that, even though the children were being placed with relatives, they "need[ed] a permanent home."

¶ 18    First, to the extent father argues that the juvenile court erred when it declined to make more specific findings about less drastic

7

alternatives, we disagree. Although consideration and elimination of less drastic alternatives is implicit in the statutory criteria for termination, a juvenile court need not make an express finding to that effect. *People in Interest of M.M.*, 726 P.2d 1108, 1122-23 (Colo. 1986). And here, the court explained that its rejection of less drastic alternatives was encompassed by its other findings. It also found that the children "need[ed] a permanent home," thus necessarily rejecting any arrangement short of that. *See A.R.*, ¶ 41.

¶ 19    Second, the record supports the juvenile court's implicit finding that an APR to maternal great-grandmother was not in the child's best interests. The caseworker testified that maternal great-grandmother "made it clear" that she wanted to adopt the children. The caseworker also testified that he discussed the treatment plan with father, including the expectation that father submit to drug testing and complete mental health and substance use evaluations, but that father never engaged with the Department or otherwise complied with the treatment plan.

¶ 20    Moreover, when father struggled to attend family time at the Department, the caseworker arranged for paternal grandmother to supervise visits. But after father violated the family time safety

8

plan by transporting the children unsupervised, the caseworker stopped the supervised visits. The caseworker attempted to address the safety plan violations and reached out to father to restart visits, but father did not respond. Thus, father had not seen the children for nearly four months at the time of the termination hearing.

¶ 21 The caseworker also testified that father did not comply with the treatment plan, that the treatment plan was not successful, and that father was unable or unwilling to provide reasonable parental care. And the caseworker opined as an expert that termination of father's parental rights was in the children's best interests.

¶ 22 Father points to the caseworker's testimony that an APR to the children's maternal great-grandmother would provide "consistency and stability" for the children. But although the caseworker made limited concessions to this effect on cross-examination, he ultimately testified that termination was necessary because of the concern that father would later "show[] up" and say he wanted his children. And he reiterated that father had done nothing to address his unfitness and gave no indication he would do so in the future.

¶ 23 It is the juvenile court's role to resolve any inconsistencies in the caseworker's testimony. *People in Interest of A.R.*, 2018 COA

177, ¶ 54 ("An appellate court may not reweigh the evidence or substitute its judgment for that of the juvenile court."), *aff'd sub nom. A.R. v. D.R.*, 2020 CO 10. Based on that testimony, the court found that father (1) did not comply with the treatment plan; (2) was not "invest[ed] in the case or in [his] children's lives"; and (3) did not maintain a meaningful relationship with the children. Those findings, all of which have record support, are sufficient to support the juvenile court's determination that an APR was not an available less drastic alternative to termination. *See B.H.*, ¶ 80.

## V. Disposition

¶ 24    The judgment is affirmed.

JUDGE GROVE and JUDGE YUN concur.