Nancy GALLION, Plaintiff–Appellee,

v.

**COLORADO DEPARTMENT OF REVENUE, MOTOR VEHICLE DIVISION, Defendant–Appellant.**

No. 05CA1054.

Colorado Court of Appeals, Div. II.

Nov. 2, 2006.

⬦786

Hammond Law Offices, Kristopher L. Hammond, Steamboat Springs, Colorado, for Plaintiff–Appellee.

John W. Suthers, Attorney General, Ceri Williams, Assistant Attorney General, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge VOGT.

The Colorado Department of Revenue, Motor Vehicle Division, appeals the district court judgment reversing its revocation of the driver's license of petitioner, Nancy Gallion, for refusing to submit to testing as required by the express consent statute. The issue on appeal is whether petitioner validly retracted her initial refusal to submit to such testing. Contrary to the district court's analysis, we agree with the Depart-

ment that she did not. We therefore reverse and remand for reinstatement of the order of revocation.

## I.

According to a police report introduced at the revocation hearing, a Steamboat Springs police officer stopped petitioner's vehicle at 11:46 p.m. on September 3, 2004, for weaving and failing to drive in a single lane. After observing that petitioner appeared intoxicated, he called a DUI (driving under the influence of alcohol) enforcement officer. That officer likewise observed indicia of intoxication, and, after petitioner could not satisfactorily perform voluntary roadside sobriety maneuvers, he arrested her for DUI. Based on petitioner's responses to his requests that she take a blood test or a breath test and his advisements concerning the consequences of refusing to do so, the officer "deemed [petitioner's] actions to be a refusal as it was clear that she did not intend to cooperate." He transported petitioner to the county jail, issued a summons and notice of revocation, and, upon completion of the paperwork, left to resume his patrol duties.

Petitioner testified at the revocation hearing that, after speaking with family members, she told the Routt County deputy sheriff at the jail that she wanted "to take the test." She testified that she made the request sometime between 1:00 and 1:10 a.m. The deputy refused because, according to testimony credited by the hearing officer, the arresting officer had left and the "paperwork [was] all finished."

The hearing officer found that there was reason to contact petitioner's vehicle; that there were sufficient indicia of intoxication for the arresting officer to believe she was driving impaired by alcohol; and that the officer had correctly explained the consequences of refusing a chemical test. He rejected petitioner's argument that, under *Zahtila v. Motor Vehicle Division*, 39 Colo. App. 8, 560 P.2d 847 (1977), she had validly retracted her initial refusal of testing because the arresting officer could have been contacted and come back to administer the test. Instead, the hearing officer concluded, petitioner could not retract her refusal after

the arresting officer had left the detention facility and was no longer available. Resolving conflicts in the testimony based on his assessment of the witnesses' credibility, the hearing officer found that, at the time petitioner told the deputy she wanted to take the test,

> [T]he officer was outside the facility. If you want to argue availability, he had left. And there's no—after all the attempts that the officer made to have Ms. Gallion take the test and went to that time and that length to 1:11 and she still would ... not choose a test with him, he left. He got back on the road to do his duty.

> So I am holding that there was a refusal here....

The hearing officer accordingly ordered that petitioner's driver's license would be revoked for one year.

On review, the district court concluded that the hearing officer had erroneously interpreted the law. Specifically, the court ruled that the law does not require that the arresting officer administer the chemical test, and that another officer could request or administer the test, as long as the latter officer had the necessary information to determine that a valid arrest was made and had reasonable grounds, based on his or her own observation, to determine that the arrestee was under the influence of alcohol.

## II.

■ The Department contends on appeal that petitioner's attempted recantation was invalid because it was not made to the arresting officer but to a custodial officer with another law enforcement agency, who had no participation in the probable cause determination or responsibility for investigating and prosecuting the DUI charges, and it was made at a time when the arresting officer was no longer available to see that the test was administered or implemented. We agree.

■ The standard governing judicial review of express consent proceedings, § 42-2-126(10)(b), C.R.S.2006, permits a reviewing court to reverse a revocation order if, as found by the district court here, the Depart-

ment has made an erroneous interpretation of the law. *Erbe v. Colorado Department of Revenue,* 51 P.3d 1096 (Colo.App.2002). However, the construction of statutes by agencies charged with their enforcement is entitled to deference, *see Colorado Department of Revenue v. Woodmen of the World,* 919 P.2d 806 (Colo.1996), and a court may not substitute its judgment for the hearing officer's resolution of factual issues based on conflicting evidence. *Alford v. Tipton,* 822 P.2d 513 (Colo.App.1991).

## A.

Under the express consent statute, a driver is required to cooperate in taking and completing a blood test or a breath test "when so requested and directed by a law enforcement officer having probable cause to believe" that the person was driving in violation of the prohibitions against DUI or similar offenses. Section 42-4-1301.1(2)(a)(I), C.R.S.2006. Pursuant to § 42-2-126(2)(a)(II), C.R.S.2006, the Department is required to revoke the driver's license of any person who refuses "to take or to complete, or to cooperate in the completing of, any test or tests of that person's blood, breath, saliva, or urine" as required by § 42-4-1301.1(2), C.R.S.2006. *See Halter v. Department of Revenue,* 857 P.2d 535 (Colo.App.1993) (under express consent statute, driver's failure to cooperate is deemed to be a refusal to submit to testing).

The statute does not expressly address the issue of whether an initial refusal to submit to testing may be retracted. However, Colorado cases, beginning with *Zahtila v. Motor Vehicle Division, supra,* have held that a refusal to submit to a test is not irrevocable and that a driver may in certain circumstances reconsider and retract his or her initial refusal. Based on these cases, Colorado is recognized as being among the minority of states that allow a motorist's subsequent consent to cure an initial refusal to submit to testing to determine blood alcohol levels. *See* Jonathan M. Purver, Annotation, *Driving While Intoxicated: Subsequent Consent to Sobriety Test as Affecting Initial Refusal,* 28 A.L.R.5th 459 (1995).

In *Zahtila*, the division held that a driver who initially refused a blood alcohol test but advised the arresting officer twenty-five minutes later that he would take the test should not have been deemed to have refused testing without being given an opportunity to show that the delay would not have materially affected the test results. The principle that a refusal to submit to testing can be recanted was also recognized in *McCampbell v. Charnes*, 626 P.2d 762 (Colo.App.1981) (acknowledging *Zahtila* rule but holding it inapplicable where driver's attorney told officer she wanted her client to take test, but client did not so indicate), and *Rogers v. Charnes*, 656 P.2d 1322 (Colo.App.1982) (driver's attempted recantation of refusal was ineffective where she failed to show that one hour and fifteen minute delay would not have materially affected test result).

More recently, in *Pierson v. Colorado Department of Revenue*, 923 P.2d 371 (Colo. App.1996), a division of this court applied *Zahtila* and discussed in greater detail the circumstances in which an initial refusal may be rectified by later consent. Reversing an order of revocation, the division disagreed with the hearing officer's ruling that, as a matter of law, a driver cannot validly retract a refusal more than two hours after the time of driving. It held that a driver's retraction and belated consent to testing need only occur within a reasonable time after driving, and it reiterated that the driver has the burden to prove that the delay in implementing testing would not have materially affected the test results.

*Pierson* was legislatively overruled in part by the General Assembly's 1999 addition of a provision that, if a law enforcement officer requests a blood or breath test, "the person must cooperate with the request such that the sample of blood or breath can be obtained within two hours of the person's driving." Section 42–4–1301.1(2)(a)(III), C.R.S. 2006; *see* Colo. Sess. Laws 1999, ch. 35, § 42–2–126(2)(a)(II) at 90.

### B.

Neither the amended express consent statute nor the case law directly addresses the question presented here—namely, whether petitioner could validly retract her initial refusal after the arresting officer had left the jail to resume his duties. The Department argues that recantation to the arresting officer is a "requirement" under *Zahtila* and *Pierson*. However, although *Pierson* refers to communication of a retraction "to the arresting officer," *Pierson, supra*, 923 P.2d at 373, we agree with petitioner that *Pierson's* focus was on "when the recantation can occur, not to whom the recantation must be made," and that neither that case nor *Zahtila* squarely holds that a recantation must be made to the arresting officer in order to be valid.

We nevertheless conclude, for the reasons set forth below, that (1) such recantation must be made to the arresting officer or other law enforcement officer with probable cause to believe the driver was violating laws prohibiting DUI or related offenses, and (2) the recantation must be made in sufficient time to obtain a blood or breath sample within two hours of the person's driving. While the district court correctly recognized that an officer other than the arresting officer may in appropriate circumstances direct the administration of a blood or breath test, the court nevertheless erred in reversing the revocation absent any evidence that such an officer was available here, and absent any evidence that the second requirement could have been satisfied.

### C.

■ The first stated purpose of the express consent law is to "provide safety for all persons using the highways of this state by quickly revoking the driver's license of any person who has shown himself or herself to be a safety hazard by driving with an excessive amount of alcohol in his or her body and any person who has refused to submit to an analysis as required by section 42–4–1301.1." Section 42–2–126(1)(a), C.R.S.2006. The law is remedial in nature and is to be liberally construed in the public interest. *See Cordova v. Mansheim*, 725 P.2d 1158 (Colo.App. 1986).

As set forth above, the express consent statute requires that a request for testing be

made "by a law enforcement officer having probable cause to believe that the person was driving a motor vehicle in violation of the prohibitions against DUI" and related offenses. Section 42–4–1301.1(2)(a)(I). It further provides that the tests "shall be administered at the direction of a law enforcement officer having probable cause to believe that the person had been driving a motor vehicle in violation of section 42–4–1301." Section 42–4–1301.1(5), C.R.S.2006.

Taken together, these provisions evidence a legislative intent that decisions regarding blood or breath testing be committed to the arresting officer or, at a minimum, to another law enforcement officer who possesses the statutorily required probable cause. *See Lahey v. Department of Revenue*, 881 P.2d 458 (Colo.App.1994) (recognizing duty imposed on arresting officers under express consent statute). Allowing a retraction to be communicated to a person other than such an officer—for example, to a detention facility official who was not shown to have probable cause to believe that the person in custody had been driving a motor vehicle while under the influence of alcohol—would be inconsistent with the language and intent of these provisions.

Further, the General Assembly's enactment of § 42–4–1301.1(2)(a)(III), requiring that the blood or breath sample be obtained "within two hours of the person's driving," evidences its intent to disallow belated consent to testing if the delay would potentially adversely affect the test results. As noted, the case law has similarly emphasized the requirement that delays in consenting must not materially affect the test results. *See Pierson, supra; Zahtila, supra.* Allowing a driver to communicate his or her belated consent to testing to a person lacking the requisite probable cause to direct testing is inconsistent with that intent and does not further the statutory purpose articulated in § 42–2–126(1)(a).

### D.

Applying these standards to the facts presented at the revocation hearing, we conclude the record amply supports the hearing officer's determination that petitioner did not validly retract her initial refusal to consent to testing.

First, there is nothing in the record to suggest that the jail deputy to whom petitioner made her attempted recantation had probable cause to believe that she had been driving in violation of the prohibitions against DUI and related offenses. Nor does petitioner so argue. Rather, she contends that the deputy was required to attempt to contact the arresting officer, who, she speculates, could have returned to the jail to administer the test or directed a sheriff's deputy to do so. We disagree. We decline to require law enforcement personnel to attempt to recall an arresting officer who has left the detention facility to resume patrol duties. We likewise decline to hold that an arresting officer who has completed the necessary paperwork and turned the arrested driver over to the custody of others is required to remain with the driver in case the driver decides to recant his or her initial refusal. Such requirements would impose a burden on law enforcement without furthering the intent and purpose of the express consent law.

Second, having initially refused testing and thereby established grounds for revocation of her license, petitioner had the burden to establish that her belated consent to testing would not have materially affected the test results. *See Pierson v. Colorado Department of Revenue, supra; Rogers v. Charnes, supra.* Petitioner made no such showing. Further, the burden was on her to "cooperate ... such that the sample of blood or breath [could] be obtained within two hours" of her driving. Section 42–4–1301.1(2)(a)(III). She made no showing that the testing could have been completed by 1:46 a.m., when the two-hour period expired. On the contrary, given the timing of petitioner's request, the hearing officer's finding that the arresting officer had by then left the facility to resume his patrol duties, and a police activity report showing that the arresting officer made another traffic stop at 1:29 a.m., there is no basis for presuming that the testing could have been completed within that period.

In sum, we conclude that the district court erred in reversing the revocation of petitioner's license.

Therefore, the judgment is reversed, and the case is remanded to the district court with directions to reinstate the order of revocation.

Judge TERRY concurs.

Judge TAUBMAN dissents.

Judge TAUBMAN dissenting.

Because I believe the plain language, statutory structure, and implementing regulations of the express consent law do not impose a requirement that a person arrested for driving under the influence of alcohol recant a refusal to take a blood or breath test in the presence of the arresting officer, I dissent. I would affirm the trial court's ruling that petitioner, Nancy Gallion, validly retracted her initial refusal to take a blood or breath test after she was arrested for driving under the influence.

On September 3, 2004 at 11:46 p.m., a police officer stopped Gallion in Steamboat Springs, and she initially declined to take an alcohol test. According to her undisputed testimony, sometime between 1:00 and 1:10 a.m., while housed in the Routt County jail, Gallion communicated to a deputy sheriff that she wished to take the alcohol test. The deputy told her the paperwork had already been completed and that she could not take the test.

Subsequently, the hearing officer found that the arresting officer was not available to administer the alcohol test because he was not present in the jail when Gallion made the request, although the arresting officer did not "clear" the police station until 1:11 a.m.

I agree with the majority that Colorado case law has not squarely addressed whether a driver must recant directly to and in the presence of an arresting officer. Therefore, I first look to the plain language of the express consent statute to discern the legislature's intent. *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023 (Colo.2004).

### I. Plain Language

The express consent statute requires that an alcohol test be "administered at the direction of a law enforcement officer having probable cause." Section 42–4–1301.1(5), C.R.S.2006. This language does not require the arresting officer to administer the test. It only requires that the officer direct the taking of the test.

To "direct" means "1. to aim (something or someone). 2. To cause (something or someone) to move on a particular course. 3. To guide (something or someone); to govern. 4. To instruct (someone) with authority. 5. To address (something or someone)." *Black's Law Dictionary* 491 (8th ed.2004).

Thus, under § 42–4–1301.1(5), the arresting officer may guide or cause the administration of the alcohol test without being physically present. Consistent with the statute, the officer may direct an arrested person by telephone, or through another officer, to be administered a blood or breath test. His or her physical presence, therefore, is not required by the plain language of the statute.

Accordingly, I agree with the trial court that the hearing officer erred as a matter of law in concluding that Gallion's arresting officer could not direct the administration of a blood or breath test because he was not physically present when Gallion recanted.

Even if I were to determine the statute is ambiguous, I would conclude that the textual context, legislative history, and implementing regulations support the plain language reading of the statute. *See* § 2–4–203, C.R.S. 2006; *Bd. of County Comm'rs v. Costilla County Conservancy Dist.*, 88 P.3d 1188 (Colo.2004).

The express consent law, viewed as a whole, does not require an arresting officer to be present to administer or to observe the test.

Indeed, the express consent law does not permit an officer to withdraw a driver's blood. Section 42–4–1301.1(6)(a), C.R.S.2006 ("No person except a physician, a registered nurse, a paramedic ... an emergency medical technician ... or a person whose normal duties include withdrawing blood samples under the supervision of a physician or regis-

tered nurse shall be entitled to withdraw blood for the purpose of determining the alcoholic or drug content therein."). In addition, a preliminary screening test performed by an officer at the site of the initial stop may not serve as a basis for a revocation. Section 42–4–1301.1(7), C.R.S.2006. Thus, a blood test *must* be administered by someone other than the arresting officer, and a breath test *may* be administered by someone other than the arresting officer. Dep't of Public Health and Environment (DPHE) Reg. 1005–2 § 1.5, 5 Code Colo. Regs. 1005–2.

Further, the arresting officer need not be present *to observe* the administration of the blood or breath test. Section 42–4–1301.1(5) of the express consent law requires that an alcohol test be administered in accordance with the Rules and Regulations Concerning Testing for Alcohol and Other Drugs of the Colorado Department of Public Health and Environment. DPHE Reg. 1005–2.

As the trial court noted, DPHE rules do not require the arresting officer to observe the test. Blood specimens must be "collected in the presence of the arresting officer *or other responsible person* who can authenticate the specimens." DPHE Reg. 10052 § 1.3.1.1.1.1 (emphasis added). Likewise, a breath test must be administered by a certified evidential breath test operator, but that person need not be a police officer. DPHE Reg. 1005–2 §§ 1.3.2.4 & 1.5. Thus, the arresting officer need not be present to administer the test or to observe its administration.

The Department of Revenue argues that permitting a driver to recant outside the presence of the arresting officer would expand the right to recantation. I disagree.

In interpreting a statute, the court may not insert new words into the statutory structure. *Schlessinger v. Schlessinger*, 796 P.2d 1385 (Colo.1990). To require the driver to recant directly to and in the presence of the arresting officer would limit the ability of a driver to retract an initial refusal to take a blood or alcohol test in a way not contemplated by the statute. Further, this limitation would contravene the salutary purpose of allowing such recantations—to encourage drivers to comply with Colorado's express consent law. *See Pierson v. Colo. Dep't of Revenue*, 923 P.2d 371 (Colo.App.1996).

## II. Availability

The arresting officer must be available to direct the administration of the test. *Zahtila v. Motor Vehicle Div.*, 39 Colo.App. 8, 560 P.2d 847 (1977). Here, the hearing officer found that the arresting officer was not available because he was not physically present when Gallion recanted her initial refusal. I believe this was an error of law because the hearing officer equated availability with physical presence and, as I have explained above, the statute does not require the arresting officer's physical presence.

The evidence at the hearing was that Gallion recanted between 1:00 a.m. and 1:10 a.m., and the hearing officer found the arresting officer was outside the jail when Gallion stated she wanted to take a blood or breath test. Accordingly, when Gallion recanted her refusal, the arresting officer was not far from the jail to which he had taken Gallion. Thus, had the arresting officer been called by the jail deputy, he may well have been available to return to the jail to direct the taking of a blood or breath test, but the hearing officer never reached that question because he found the officer's physical absence was enough to prevent Gallion from recanting her initial refusal.

Regardless of how far away the arresting officer was, however, I believe that Gallion was entitled to call the arresting officer, either directly or with the assistance of the jail deputy, to advise him that she wished to take a blood or breath test. Such a call would not have been administratively burdensome and would have enabled the arresting officer promptly to "direct" the taking of a blood or breath test.

I do not mean to suggest that an arresting officer must stay with the driver for the entire two-hour period in order to remain available. Nor do I believe that the detention facility deputy should be required to administer the alcohol test. However, it is entirely consistent with the express consent statute to require the deputy to attempt to contact the arresting officer to advise the officer that the driver wishes to retract an

earlier refusal to take an alcohol test. If the arresting officer desires to speak directly with the driver, the deputy could ensure such direct communication. *Cf. McCampbell v. Charnes,* 626 P.2d 762 (Colo.App.1981) (retraction of refusal to take test insufficient when made by driver's attorney, rather than by driver).

### III. Delay Materially Affecting Test Results

Gallion argues a driver does not have the burden to show that the delay would not have materially affected the test results. I agree.

Before the General Assembly amended the express consent statute, divisions of this court held that a driver has the burden of showing the delay caused by his or her initial refusal to take a blood or breath test would not have materially affected the test results. *Zahtila v. Motor Vehicle Div., supra; see also Rogers v. Charnes,* 656 P.2d 1322 (Colo. App.1982). Another division of this court later ruled that a driver may recant within a reasonable time, rather than within two hours of driving, if the delay in recanting does not materially affect the test results. *Pierson v. Colo. Dep't of Revenue, supra.* That division held the dispositive issues as to the validity of the retraction are whether it occurred within a reasonable time after the accident, rather than within two hours of driving, and whether the petitioner established that the delay in obtaining his or her consent to taking the breath test would not have materially affected the test results. *Pierson v. Colo. Dep't of Revenue, supra,* 923 P.2d at 373.

In 1999, the General Assembly overruled *Pierson* in part, imposing a condition that "the person must cooperate with the request such that the sample of blood or breath can be obtained within two hours of the person's driving." Section 42–4–1301.1(2)(a)(III), C.R.S.2006. In my view, this amendment legislatively overruled *Pierson* in two ways. First, it eliminated the subjective "reasonable time" standard and imposed an objective two-hour period within which a test must be administered. Second, it eliminated the requirement that a driver prove the delay in

obtaining consent because of his or her initial refusal would not have materially affected the test results.

My conclusion is supported by the legislative history of the 1999 amendment.

In presenting the bill on second reading, shortly before its unanimous passage, the bill's Senate sponsor, Senator John Evans, stated the reason for the amendment was to require a driver to submit to a test within the two-hour time frame "because after two hours, the test's validity begins to fall off and the test is no longer valid." Hearings on H.B. 99–1026 before Senate, 62d Gen. Assemb., 1st Sess. (Mar. 5, 1999).

Likewise, at the earlier House Transportation and Energy Committee hearing, Ray Slaughter, Executive Director of the Colorado District Attorneys' Council, testified that the two-hour requirement was intended to address the validity of the alcohol test and the concern that the results become less reliable after that period. Hearings on H.B. 99–1026 before House Transp. & Energy Comm., 62d Gen. Assemb., 1st Sess. (Jan. 13, 1999).

In any event, the previous requirement that a driver prove the delay would not materially affect the test results is unsupported by either statute or a careful review of case law.

A division of this court held for the first time in *Zahtila* that "the primary purpose of the statute is fulfilled unless the delay will materially affect the result of the test." *Zahtila v. Motor Vehicle Div., supra,* 39 Colo.App. at 10, 560 P.2d at 849. The *Zahtila* division cited *Cavagnaro v. Motor Vehicles Division,* 19 Or.App. 725, 528 P.2d 1090 (1974), but that opinion does not support the above-quoted proposition. Further, Oregon has adopted the majority view that a driver cannot recant an initial refusal. *See* Jonathan M. Purver, Annotation, *Driving While Intoxicated: Subsequent Consent to Sobriety Test as Affecting Initial Refusal,* 28 A.L.R.5th 459 (1995). In fact, the *Cavagnaro* court addressed an unrelated issue (whether a police officer waives invocation of the express consent statute by allowing a

driver time to decide whether to take the alcohol test).

Additionally, the *Zahtila* division did not cite any case law or statute for the proposition that the driver had the burden of showing that the delay in taking an alcohol test does not materially affect the test results. Therefore, because I conclude there is no statutory or sound case law basis for the requirement that a driver has the burden to prove the delay would not materially affect the test results, that requirement should not be applied here.

Likewise, I do not believe the statutes and case law required Gallion to show that she could have taken the test within two hours. Colorado cases have held that a driver has the burden of showing the delay in taking the test due to his or her initial refusal would not have materially affected the test results. *See Rogers v. Charnes, supra; Zahtila v. Motor Vehicle Division, supra.* No Colorado case to date, however, has held that the driver must prove that the test could have been performed within two hours of driving. By the same token, the statute does not impose such a burden.

Imposing such a burden here would be especially unfair, because Gallion's retraction of her refusal to take a test occurred well within the two-hour period.

I also believe the General Assembly effectively reaffirmed the right to recant an initial refusal in enacting the 1999 amendment. "When the legislature reenacts or amends a statute and does not change a section previously interpreted by settled judicial construction, it is presumed that it agrees with judicial construction of the statute." *Tompkins v. DeLeon,* 197 Colo. 569, 571, 595 P.2d 242, 243–44 (1979).

By failing to address the right to recant when it amended the express consent statute, the General Assembly presumably agreed with the judicially created right to recant.

Here, the evidence was undisputed that Gallion recanted her initial refusal between one hour and fourteen minutes and one hour and twenty-four minutes after the initial stop. This was well within the statutory period, and there is little doubt the arresting officer could have directed the administration of a blood or breath test that could have been administered within two hours of Gallion's driving.

Finally, the Department contends that Gallion could not recant to the Routt County deputy because he did not participate in the probable cause determination and had no responsibility for investigating and prosecuting the DUI charges. Because I believe the hearing officer erred in concluding that the arresting officer was not available because he was not physically present when Gallion retracted her refusal to take a blood or breath test, I do not address this question.

Accordingly, I would affirm the trial court's reversal of the hearing officer's order of revocation.