The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 26, 2022

## 2022COA55

**No. 18CA1409, *People v. Montoya* — DUI; Regulation of Vehicles and Traffic — Alcohol and Drug Offenses — Expressed Consent for the Taking of Blood, Breath, Urine, or Saliva — Refusal; Evidence — Remainder of or Related Writings or Recorded Statements**

In the context of a driving under the influence (DUI) prosecution, the division confronts two issues of first impression. First, what constitutes a defendant's refusal to take a blood test under the Colorado Expressed Consent Statute, section 42-4-1301.1(2)(a), C.R.S. 2021, when the district court is asked to make a pretrial evidentiary ruling? The division concludes that a finding of refusal by a district court must be based on the law of refusal that has developed in the context of administrative proceedings revoking an individual's driver's license due to a refusal to take a chemical test.

Second, what evidence of refusal should be presented to a jury when the prosecution seeks to use a statement made by the defendant but the defendant disputes refusal?  The division concludes that, in such a situation, the entire circumstances surrounding the defendant's statements made during the test-taking must be presented to the jury under the rule of completeness, CRE 106.

The special concurrence would reach the same result but writes separately to call attention to whether a so-called *Cox* jury instruction, *see Cox v. People*, 735 P.2d 153 (Colo. 1987), should be provided at all in DUI prosecutions, but especially where, as here on remand, the issue of refusal is disputed.

COLORADO COURT OF APPEALS    **2022COA55**

Court of Appeals No. 18CA1409
Arapahoe County District Court No. 17CR445
Honorable Phillip L. Douglass, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Glen Gary Montoya,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE JOHNSON
Fox, J., concurs
Welling, J., specially concurs

Announced May 26, 2022

Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Mackenzie Shields, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    We are presented with two issues of first impression in the context of the Colorado Expressed Consent Statute, section 42-4-1301.1(2)(a), C.R.S. 2021: First, when the district court is asked to make a pretrial evidentiary ruling on whether a defendant refused to take a blood test, what constitutes refusal in the context of a driving under the influence (DUI) prosecution?  And second, what evidence of refusal should be presented to a jury when the prosecution seeks to use a defendant's statement but the defendant disputes refusal?

¶ 2    On the first issue, we conclude that if the district court makes a pretrial finding of refusal for evidentiary purposes, the ruling must be based on the law of refusal that has developed in the context of administrative proceedings revoking an individual's driver's license due to refusal to take a chemical test.  As to the second issue, if the prosecutor seeks to use as evidence a defendant's written or recorded *statement* refusing a chemical test, but the defendant disputes refusal, the entire circumstances surrounding the defendant's test-taking must be submitted for the jury's consideration.

¶ 3      In this case, defendant, Glen Gary Montoya (Montoya), was convicted of felony DUI as a fourth or subsequent offense.  On appeal, Montoya contends that the district court erred by (1) violating his right to have a jury decide all the elements of felony DUI beyond a reasonable doubt (including the fact of his prior convictions); (2) redacting a video showing the events surrounding his attempted blood test; and (3) admitting testimony from the investigating officer about that officer's decisions whether to arrest DUI suspects and whether the officer has probable cause.

¶ 4      Because we determine that the misdemeanor DUI conviction underlying Montoya's felony DUI conviction must be reversed, we need not address his first contention.  With respect to Montoya's second contention, we reverse his misdemeanor DUI conviction because we conclude that the district court abused its discretion in two respects.  First, the court erred by determining that Montoya refused to take a blood test when he later indicated a willingness to take it within the two-hour window authorized by law.  Second, the district court erred by only providing the redacted video to the jury, as it was potentially misleading or incomplete because it did not include Montoya's later statement indicating a willingness to take

the test.  We therefore remand for a new trial.  And because Montoya's third contention involving the officer testimony is unlikely to arise in the same posture on remand in the event of a retrial, we decline to address it.

## I.     Background

¶ 5     On the morning of the incident, Montoya got into his car after arguing with his wife's daughter, S.M.  S.M. then called the police to report that she "believed" Montoya was driving after drinking. Montoya drove into the back of another car.  The other driver called the police and reported that Montoya showed signs of intoxication.

¶ 6     Montoya was arrested and went to trial on charges that included DUI (three prior or subsequent offenses), § 42-4-1301(1)(a), C.R.S. 2021, and careless driving, § 42-4-1402(1), (2)(a), C.R.S 2021.[1]  At trial, the jury found Montoya guilty of DUI and careless driving.[2]  In a separate hearing, the court found by a preponderance of the evidence that Montoya's DUI violation was his

---

[1] Before trial, Montoya pled guilty to failing to provide proof of insurance.
[2] We do not address Montoya's careless driving conviction, as his contentions on appeal do not implicate that offense.

fourth conviction, thus elevating his DUI to a felony.  *See* § 42-4-1301(1)(a).

## II. Exculpatory Statement

¶ 7    Montoya contends that the district court erred by excluding his exculpatory statement that he was willing to take a blood test. We agree.

### A. Additional Facts

¶ 8    After a first officer initially responded to the scene of the collision, Officer Brian O'Halloran (Officer O'Halloran) and a third officer arrived.  Officer O'Halloran's body camera video reflects that he arrived at the scene at 1:16 p.m., but that the collision took place (and Montoya stopped driving) around 12:40 p.m.[3]  Officer O'Halloran approached Montoya and noticed that he smelled of alcohol, had bloodshot eyes, and had slurred speech. Officer O'Halloran also noticed that Montoya's pants were wet and thought Montoya had urinated on himself.  Officer O'Halloran requested but Montoya declined to perform roadside maneuvers, at which point

---

[3] The driver of the car that Montoya hit testified that she waited about twenty minutes after the collision to call the police because Montoya was attempting to call his insurance carrier.

the officer arrested Montoya on suspicion of DUI and advised him about the Expressed Consent Statute. Montoya initially agreed to take a blood test.

¶ 9 Officer O'Halloran took Montoya to detox, where Montoya read and signed what is generally referred to as the expressed consent form and again agreed to a blood test. At 2:05 p.m., however, Montoya refused to give permission to the nurse when she arrived to perform the blood test. Officer O'Halloran's body camera video shows Montoya telling the nurse, "Yeah, but I don't think I'm gonna do it." The last event shown in the clip of the video shown to the jury is Montoya stating, "2:05, Glen Montoya refused" and the officer acknowledging this statement. About ten or fifteen minutes after his refusal and after the nurse had departed, but approximately twenty minutes before the two-hour window within which the test had to be administered expired at approximately 2:40 p.m., Montoya told officers he would take the test. Because the unredacted video from Officer O'Halloran's body camera is not included in the record on appeal, we assume Montoya's request to later take the test was denied. By law, if a chemical test is administered on an individual within two hours from when the

5

individual ceased driving, the prosecutor may use evidence of that refusal at trial.  §§ 42-4-1301(6)(d), 42-4-1301.1(2)(a)(III).

¶ 10    In a pretrial ruling, the district court concluded that Montoya's later statement that he was willing to take the test was self-serving hearsay because once he refused the test, he was not entitled to change his mind.  The district court determined that Montoya's later statement would be prejudicial and confuse the jury because the jurors would question why the test had not been administered. As a result, and despite defense counsel's objections based on CRE 106's rule of completeness, the court allowed the prosecution to redact the portion of the video that included Montoya's statement that he would take the test.  At trial, the district court gave a jury instruction that Montoya had refused to take the chemical test.

### B.    Standard of Review

¶ 11    We review evidentiary rulings for an abuse of discretion. *People v. Jones*, 2013 CO 59, ¶ 11.  A district court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or is based on a misapplication of the law.  *People v. Rios*, 2020 COA 2, ¶ 9.

¶ 12    We review whether a particular jury instruction should have been provided to the jury for an abuse of discretion. *Chapman v. Harner*, 2014 CO 78, ¶ 4. Whether a jury was appropriately instructed on the law is an issue we review de novo. *Id.*

## C.    Analysis

¶ 13    We first address the district court's pretrial ruling on refusal. Then we address the redacted video with the instruction provided to the jury.

### 1.    Refusal to Take a Chemical Test

¶ 14    Prior to trial, the prosecutor sought clarification on her request to redact Officer O'Halloran's body camera video to exclude the ten minutes when Montoya later stated a willingness to take the test. We note that the video recording certified on appeal only includes the redacted version that was published to the jury.[4] In opposition to the prosecutor's request, defense counsel stated, "Further, I believe this would be a question of fact for the jury in terms of what a refusal is, and there is a distinction between a

---

[4] The record includes two versions of the body camera video, neither of which includes the ten or fifteen minutes when Montoya later indicated a willingness to take the test.

refusal for DMV purposes and what the jury decides to be a refusal." Defense counsel continued, "I expect the prosecution will be trying to admit a jury instruction that says you can infer that the refusal is evidence of guilt, and I think taking out a piece of what happened during the refusal gives an improper impression to the jury."

¶ 15    We agree with defense counsel. As a result, we conclude that the district court's reasoning that once Montoya refused the test he could not change his mind is, in this case, a misapplication of the law.

¶ 16    Colorado's Expressed Consent Statute provides that "if a person elects either a blood test or a breath test, the person shall not be permitted to change the election." § 42-4-1301.1(2)(a)(II). It continues that, "if the person fails to take and complete, and to cooperate in the completing of, the test elected, the failure shall be deemed to be a refusal to submit to testing." *Id.* The law clarifies that "the person must cooperate with the request such that the sample of blood or breath can be obtained within two hours of the person's driving." § 42-4-1301.1(2)(a)(III). Based on the plain language of the statute, this binding decision of which test to take

is separate from whether the person fails to "take and complete" or fails to "cooperate" with taking the test. *See Pulte Home Corp., Inc. v. Countryside Cmty. Ass'n*, 2016 CO 64, ¶ 24 (in reviewing the plain language of statutes, we give words their ordinary meanings (citing *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2011))).

¶ 17 When a person refuses to take a chemical test, the officer must serve on the individual — if the person is still in the officer's presence — a notice that the individual's driver's license may be revoked by the Department of Revenue, Division of Motor Vehicles (DMV). § 42-2-126(5)(b)(I), C.R.S. 2021. This notice is part of the DMV's administrative process for license revocation, and an individual may request a hearing before a hearing officer and then seek judicial review of any final determination. § 42-2-126(6)-(9).

¶ 18 In the context of driver's license revocation proceedings, there is ample guidance on what constitutes a refusal or refusal by noncooperation to take a chemical test. In *Gallion v. Colorado Department of Revenue*, 171 P.3d 217, 222 (Colo. 2007) (*Gallion II*), for example, our supreme court determined a licensee must "timely cooperate." *See also Schulte v. Colo. Dep't of Revenue*, 2018 COA

9

140, ¶ 31.  Thus, while a licensee's initial denial may not be irrevocable, the driver must agree to the test "while the officer remains engaged in requesting or directing the completion of the test."  *Id.* (quoting *Gallion II*, 171 P.3d at 222).  Whether a licensee cooperates with an officer is based on an objective standard of the "driver's external manifestations of willingness or unwillingness to take a test."  *Alford v. Tipton*, 822 P.2d 513, 516 (Colo. App. 1991).  The licensee has the burden to prove cooperation.  *Gallion v. Dep't of Revenue*, 155 P.3d 539, 544 (Colo. App. 2006) (*Gallion I*), *aff'd*, 171 P.3d 217 (Colo. 2007).[5]

¶ 19     A licensee may not be able to recant the refusal to take the test if, for example, the officer has already served the notice of revocation of licensure and returned to his patrol duties, meaning the officer has disengaged.  *See Gallion II*, 171 P.3d at 223.  And a licensee's unwillingness to take a test may be construed as a "refusal by noncooperation" if, for example, the licensee requests to speak with an attorney, *see Haney v. Colo. Dep't of Revenue*, 2015 COA 125, ¶ 18, or the licensee remains silent and thus does not

---

[5] We take no position on whether the defendant bears any burden of proof on this issue in a criminal context.

10

provide affirmative consent, *see Poe v. Dep't of Revenue*, 859 P.2d 906, 908 (Colo. App. 1993).

¶ 20     The record is not clear — despite the district court's finding of refusal — that Montoya lost his chance to take the test when the nurse arrived and he refused to take the test but later stated a willingness to take it.  In *Gallion II*, 171 P.3d at 222-23, the officer had "disengaged" by returning to his duties at the time the licensee changed her mind and expressed her willingness to take the test. Here, however, the officer who arrested Montoya and took him to detox was also the officer who drove him to the municipal jail. True, as the prosecutor pointed out during pretrial proceedings, when Montoya realized he was going to jail, he indicated a willingness to take the test.  And the district court questioned the interval from when Montoya refused to when he changed his mind, with the prosecutor noting that the nurse had departed by that time.

¶ 21     But as mentioned above, because the record on appeal does not contain the ten to fifteen minutes of video following Montoya's refusal at 2:05 p.m., we do not know whether the officer was "disengaged" in a manner consistent with refusal or whether

11

Montoya engaged in other actions that the officer could properly construe as a refusal by noncooperation. And other than the district court indicating that it had heard just a "small blurb" of the body camera video, there is no indication in the record that the court reviewed the ten to fifteen minutes of video that included Montoya's later statement.[6]

¶ 22    Thus, because the district court did not make its refusal determination based on review of the whole video, we will not apply our usual presumption that a district court's decision is correct and supported by the evidence when the unredacted version of the video is not available to us. *Cf. People v. Duran*, 2015 COA 141, ¶¶ 11, 12 ("A trial court's rulings and judgments are presumed correct until the party attacking them affirmatively demonstrates they are not," which requires designating the entire record necessary for review.).

¶ 23    Even the Attorney General concedes on appeal that Montoya's change of mind occurred within the two-hour window for administering the test. *See* § 42-4-1301.1(2)(a)(III). Yet the record does not reveal why a test could not have been administered in that

---

[6] The district court also specifically indicated it had "not seen the body cam footage."

timeframe.[7]  Consequently, the district court's legal conclusion that a person's refusal to take a blood test is irrevocable was an abuse of discretion without first finding that Montoya had refused because the officer had disengaged, the test could not be administered within the two-hour window when he later changed his mind, or Montoya engaged in other actions that constituted refusal by noncooperation.  As discussed below, this error was not harmless based on Montoya's contention that the rule of completeness required the jury to view the entirety of the video documenting the circumstances surrounding the test.

### 2.    Redacted Video

¶ 24     Under CRE 106, Montoya contends the entire video of his test-taking should have been presented to the jury.  We agree.

¶ 25     The concept of completeness was originally a common law rule that was later codified in CRE 106.  *People v. Melillo*, 25 P.3d 769, 775 n.4 (Colo. 2001) (at common law, the rule of completeness

---

[7] One of the officers indicated at a suppression hearing that he waited approximately twenty minutes for the nurse to initially arrive to administer the test.  After Montoya's change of mind, however, it is unknown whether the nurse could have come back to administer the test before the statutory two-hour period expired at approximately 2:40 p.m.

13

pertained to all statements). CRE 106 provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." This rule is intended to "prevent[] a party from achieving an unfair result by introducing all or part of a writing or recording out of its context." *People v. Short*, 2018 COA 47, ¶ 42 (quoting 2 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* § 106.02 (11th ed. 2015)).

¶ 26    Instead, subject to considerations of relevance and prejudice under CRE 401 and 403, "if a statement made by the defendant in a criminal case is admissible in evidence as an admission or declaration, it is admissible as an entire statement, including the parts thereof which are favorable as well as the parts which are unfavorable to the party offering the same." *Melillo*, 25 P.3d at 775 (quoting *McRae v. People*, 131 Colo. 305, 311, 281 P.2d 153, 156 (1955)).

¶ 27    The rule of completeness is akin to the judicially created doctrine of "opening the door," which is "also based on principles of

14

fairness and completeness." *Id.* "The concept of 'opening the door' represents an effort by courts to prevent one party in a criminal trial from gaining and maintaining an unfair advantage by the selective presentation of facts that, without being elaborated or placed in context, create an incorrect or misleading impression." *People v. Heredia-Cobos*, 2017 COA 130, ¶ 20 (quoting *People v. Murphy*, 919 P.2d 191, 195 (Colo. 1996)).

¶ 28     After analyzing numerous treatises and legal sources, a division of this court in *Short*, ¶ 49, concluded that while evidence may include hearsay or exculpatory statements made by the defendant, under the rule of completeness, "[i]f the prosecution wants to admit part of a statement, it ought, in fairness, to 'pay the costs' of admitting it in its (relevant) entirety under the rule of completeness. If it is not willing to pay the costs, it should not be permitted to admit any portion of the statement." *See id.* at ¶ 42 ("When the trial court finds that fairness requires the admission of additional evidence, the proponent must decide between allowing all of the evidence to be admitted and withdrawing the originally proffered portions." (quoting 2 Saltzburg et al., § 106.02)). We agree

with *Short* and conclude for three reasons that Montoya's entire test-taking video needed to be presented to the jury under CRE 106.

¶ 29    First, based on our analysis in Part II.C.1, *supra,* because a driver's initial refusal may not be binding depending on the entire circumstances of the exchange (i.e., whether the officer "disengaged," the amount of time left to administer the test in the two-hour window, and the driver's external actions), the entire video of the test-taking circumstances, which includes the remaining ten to fifteen minutes, needed to be presented so the jury had a complete picture of what had occurred.

¶ 30    Second and relatedly, given our agreement with *Short,* we are not convinced that the redacted video was properly excluded because it included self-serving hearsay.  We acknowledge that other divisions of this court have concluded that self-serving hearsay may be excluded because it lacks an indicia of trustworthiness.  *See, e.g.*, *People v. Davis*, 218 P.3d 718, 731 (Colo. App. 2008); *People v. Zubiate*, 2013 COA 69, ¶ 33, *aff'd,* 2017 CO 17.  *But see People v. Vanderpauye*, 2021 COA 121, ¶ 3 (self-serving hearsay is not per se inadmissible, but it is subject to CRE 403 and the statement must satisfy a hearsay exception).  But, as *Short*

recognized, many commentators opine that the rule of completeness acts to "trump" otherwise inadmissible evidence to prevent a misleading or incomplete view. Indeed, "[a] party should not be able to admit an incomplete statement that gives an unfair impression, and then object on hearsay grounds to completing statements that would rectify the unfairness." *Short*, ¶ 45 (quoting 2 Saltzburg et al., § 106.02).

¶ 31    *Zubiate* is instructive in distinguishing between using *evidence* of a defendant's refusal and using the *statement* of a defendant's refusal as evidence. That case dealt with a defendant who refused to take a blood test because she was afraid of needles. *Zubiate*, ¶ 5. A division of this court noted that the inculpatory statement — the defendant's refusal to take the test — was not introduced as evidence. Instead, when asked by the prosecutor whether the defendant agreed to provide a blood sample, the officer simply indicated, "No, ma'am." *Id.* at ¶ 32. In addition to holding that the exculpatory statement was self-serving hearsay, *Zubiate* determined that, under the rule of completeness, there was no *statement* that needed to be completed. *Id.* Here, on the other hand, the jury specifically viewed Montoya's *statements* of refusal from the video.

As a result, the ten to fifteen minutes of video with his subsequent *statement* indicating a willingness to take the test were needed for a complete understanding of his prior *statements* of refusal.

¶ 32     Finally, we are unpersuaded that the evidence of Montoya's later statement would cause confusion to the jury or prejudice to the prosecution under CRE 403.  Under *Short*, ¶ 49, the prosecution needed to either "pay the costs" and show the entire video or withdraw the evidence.  Here, the district court indicated that the jury would question why Montoya was not given the test.  But that is precisely the point.  Because refusal to take a chemical test may be more complex and nuanced than simply saying "no" — as demonstrated in this case — the jury's potential question as to why Montoya was not given the test if shown the latter portion of the video would put the issue of refusal in dispute.  Redacting the video allowed the prosecution to stop at the refusal at 2:05 p.m. and relieved it of its responsibility to present evidence as to why Montoya's later change of mind still nonetheless constituted refusal or refusal by noncooperation.

¶ 33     Indeed, during the redacted video shown to the jury, Montoya was shown vacillating and asking for legal advice as to whether he

18

should take the test. Because we do not have the unredacted version, if Montoya continued to vacillate, the jury could very well have considered his later "change of mind" to be a delay tactic or refusal by noncooperation. Or, as the prosecutor argued pretrial, because Montoya only changed his mind after he knew he was going to jail, the officer could have testified he had "disengaged" and Montoya lost his opportunity to take the test. But without making the prosecution "pay the costs" of showing the entire test-taking circumstances, the jury was not given the complete picture.[8]

¶ 34    Thus, we conclude that, under the facts of this case, when refusal to take a chemical test is disputed by the defendant based on the defendant's recorded or written statement that the prosecution seeks to use at trial, the entire statement must be presented to the jury for its consideration.[9] Because the district

---

[8] Our opinion should not be read to imply that, explicitly or implicitly, Montoya consented to take a chemical test when he later purportedly changed his mind.

[9] Our opinion should not be read to mean that any time a defendant disputes that he refused to take a chemical test, his statements will *always* be admissible under CRE 106.

court permitted the video footage to be redacted, we conclude that this was error.[10]

### 3. The Error Was Not Harmless

¶ 35  We thus turn to whether presenting the jury with the redacted version of the video was reversible error. We review preserved challenges to evidentiary rulings for harmless error. *See Pernell v. People*, 2018 CO 13, ¶ 22. Nonconstitutional harmless error requires reversal only if we conclude that it affected the substantial rights of a party. *People v. Murphy*, 2021 CO 22, ¶ 71. This means that the error substantially influenced the verdict or impaired the fairness of the trial. *People v. Valera-Castillo*, 2021 COA 91, ¶ 36. The error here was not harmless.

¶ 36  The prosecutor presented the case as one in which Montoya refused to take the blood test. In opening statements, the prosecutor stated:

> At first Mr. Montoya says, Okay, I'll give you my blood. You'll see when they're at the detox center and the nurse arrives, Mr. Montoya

---

[10] We acknowledge that the supreme court will be considering the issue of whether self-serving hearsay is admissible under the rule of completeness in *People v. McLaughlin*, (Colo. No. 21SC506, Mar. 14, 2022) (unpublished order). Our analysis remains unchanged given current precedent.

decides to not show us what is in his blood, let us know what alcohol he had in his system. You will hear that Mr. Montoya did admit to drinking two beers prior, but doesn't say anything else regarding that.

As a result of the court's ruling allowing the video to be redacted, defense counsel likewise had to present the case as one involving a refusal to submit to a chemical test. In opening statements, defense counsel stated, "Mr. Montoya said, Well, I did have two beers, I don't know how that will show up, and then said, I'm not going to take the test." The video was introduced and admitted as evidence through the testimony of Officer O'Halloran, with the jury hearing Montoya's statements refusing the blood test. But Officer O'Halloran did not testify that he was "disengaged" after Montoya refused at 2:05 p.m., nor did the officer testify that he construed Montoya's actions as a refusal by noncooperation.

¶ 37 During closing argument, the prosecutor stated:

> [Montoya] refused a chemical test. The evidence to show how much alcohol he had in his system was the defendant's to give and he chose not to give you that evidence. And why? What was he hiding? Two beers? You can use your common sense and experience in life about drinking two beers at noon and getting a blood draw at 2:00.

21

You heard him in that video say how important it is to keep his license because he wants to get a job at Comcast. You heard him say, If I refuse are you going to take my license right now? He knew that, and he chose to do that rather than give the evidence of his blood because common sense would say he didn't have two beers.

And, at the jury instruction conference, defense counsel argued that the refusal instruction is not a standard Colorado jury instruction for DUI or driving while ability impaired (DWAI) cases. Defense counsel also argued the instruction was "more like a theory of the prosecution than an actual statement of the law" and that it "impermissibly highlights one fact that is likely more beneficial to the prosecution."

¶ 38    Jury instruction 14 stated:

A person who drives a motor vehicle upon the streets and highways and elsewhere throughout this state shall be required to take and complete, and to cooperate in the taking and completing of, any test or tests of the person's breath or blood for the purpose of determining the alcoholic content of the person's breath or blood when so requested and directed by a law enforcement officer having probable cause to believe that the person was driving a motor vehicle while under the influence of alcohol or driving a motor vehicle while the person's ability to operate a vehicle was impaired by alcohol.

> If you find that Mr. Montoya refused to take and complete, and to cooperate in the taking and completing of a chemical test of his breath or blood, you may consider this refusal along with other evidence in determining whether Mr. Montoya is guilty of Driving Under the Influence or Driving While Ability Impaired.

¶ 39    We acknowledge that a jury is permitted to consider a driver's refusal of a test as part of the evidence to determine guilt of an alcohol-related driving offense, and that such consideration of the evidence generally is presented in the form of what we call a *Cox* instruction.  *See Cox v. People*, 735 P.2d 153, 155 (Colo. 1987); *see also People v. Mersman*, 148 P.3d 199, 201 (Colo. App. 2006) (interpreting *Cox* to mean that the jury may be instructed to "consider a driver's refusal to take a blood or breath test, along with other evidence, in determining his or her guilt of driving under the influence").

¶ 40    We also acknowledge that our supreme court has concluded that introducing evidence of a person's refusal to take a chemical test neither violates a defendant's Fourth Amendment rights nor violates the defendant's equal protection rights.  *See Fitzgerald v. People*, 2017 CO 26, ¶ 27 ("The prosecution's use of a defendant's

23

refusal to consent to a blood or breath test as evidence of guilt, in accordance with the terms of Colorado's Expressed Consent Statute, does not violate the Fourth Amendment."); *see also People v. Hyde*, 2017 CO 24, ¶ 31 (taking a chemical test of an unconscious driver does not violate equal protection because without it the People are "deprived of the evidence they typically rely on in drunk-driving prosecutions," such as having the defendant "perform roadside maneuvers, display speech or conduct indicative of alcohol impairment, or admit to alcohol consumption").

¶ 41   And we must presume the jury followed the instructions. *See People v. Kern*, 2020 COA 96, ¶ 14. As a result, the jury was *invited* to consider Montoya's refusal as part of the evidence when it did not have the entire video in which Montoya later claimed a willingness to take the test.

¶ 42   In the context of analyzing whether evidence of refusal is even admissible, *Cox* noted that "[t]he weight to be given the evidence of refusal is for the jury to determine." 735 P.2d at 159. It continued, "[b]ecause a defendant may have a reason for refusing to submit to a test that is unrelated to a consciousness of guilt, the inference of intoxication that is permissible from evidence of refusal is

24

rebuttable." *Id.* Here, the "consciousness of guilt" may have been rebutted precisely because Montoya claimed a willingness to later take the test.

¶ 43 Again, whether the jury would credit Montoya's later statement of willingness is for that fact finder to decide, but we cannot say that providing the *Cox* jury instruction on refusal when the entire test-taking circumstances were not also provided did not substantially influence the verdict or affect the fairness of the trial. *See People v. Arzabala*, 2012 COA 99, ¶ 13 (as the fact finder, it is the jury's responsibility to weigh the evidence and resolve any conflicts or inconsistences).[11]

¶ 44 Although Montoya admitted to drinking two beers earlier, he also claimed he was not drunk; the first officer who had contact with Montoya testified he did not notice an indicia of intoxication; there was no evidence of open liquor on Montoya (a shot of vodka

---

[11] Although we refer to defense counsel's objections at the jury instruction conference to providing a so-called *Cox* instruction, Montoya did not raise on appeal a separate contention asserting that the district court erred in this regard. Thus, we take no further position other than what we have already stated. *See Moody v. People*, 159 P.3d 611, 614 (Colo. 2007) (generally arguments not advanced on appeal are deemed waived (citing *People v. Salazar*, 964 P.2d 502, 507 (Colo. 1998))).

was found on him but it was sealed); and there were no eyewitnesses to Montoya drinking, as S.M. "believed" he was intoxicated but was not close enough to him to smell alcohol on him. Therefore, we reverse Montoya's DUI conviction and remand for a new trial.

### III. Montoya's Other Contention

¶ 45 Finally, Montoya contends that Officer O'Halloran's testimony was improper because it included "screening" evidence of probable cause and arrests of DUI suspects. Because the testimony came up in the officer's re-direct examination in response to the defense's cross-examination, there is no indication that it will be presented in the same posture on remand. Therefore, we decline to address it.

### IV. Conclusion

¶ 46 We reverse Montoya's felony and underlying misdemeanor DUI convictions and remand the case for a new trial.

JUDGE FOX concurs.

JUDGE WELLING specially concurs.

JUDGE WELLING, specially concurring.

¶ 47 I agree with the majority in full. I write separately to highlight a jury-instruction predicament that I anticipate will arise on remand.

¶ 48 As explained in the majority opinion, we reverse for two reasons: (1) because the record and the court's findings regarding Montoya's refusal of chemical testing weren't adequate; and (2) because the court abused its discretion when it limited the evidence presented to the jury on the issue of refusal.

¶ 49 On remand, the trial court will need to determine, based on the totality of the record, whether Montoya did "refuse" chemical testing, as that term is used within Colorado's Expressed Consent Statute, section 42-4-1301.1, C.R.S. 2021. If the trial court finds refusal, then the evidence of that refusal will be admissible at trial. *See* § 42-4-1301(6)(d), C.R.S. 2021. And there are two more decisions that it will then need to make: (1) what evidence relating to refusal will be admitted; and (2) what, if any, instruction will it give to the jury regarding the evidence of refusal. The majority opinion appropriately focuses its analysis on the first question. I completely agree with the majority's analysis in that regard.

27

¶ 50    I write separately, however, to focus on the second issue. Crafting this instruction under these circumstances — namely, where the fact of refusal is disputed — is perilous.  My concerns begin with the refusal instruction that the court gave at the trial, which is where I turn first.

I.    Concerns Regarding the Refusal Instruction Given at Trial

¶ 51    Even apart from the errors identified in the majority opinion, the refusal instruction given at trial was, in my view, problematic. At trial, the court gave the jury the following refusal instruction:

> A person who drives a motor vehicle upon the streets and highways and elsewhere throughout this state shall be required to take and complete, and to cooperate in the taking and completing of, any test or tests of the person's breath or blood for the purpose of determining the alcoholic content of the person's breath or blood when so requested and directed by a law enforcement officer having probable cause to believe that the person was driving a motor vehicle while under the influence of alcohol or driving a motor vehicle while the person's ability to operate a vehicle was impaired by alcohol.
>
> *If you find that Mr. Montoya refused to take and complete, and to cooperate in the taking and completing of a chemical test of his breath or blood*, you may consider this refusal along with other evidence in determining whether Mr.

> Montoya is guilty of Driving Under the
> Influence or Driving While Ability Impaired.

(Emphasis added.)

¶ 52    This instruction is problematic for at least three reasons, and those problems all revolve around the phrase "[i]f you find that Mr. Montoya refused."

¶ 53    First, the instruction called on the jury to make a *finding* regarding whether Montoya refused chemical testing.  We don't generally ask juries to make findings that aren't elements of charged crimes or facts necessary to enhance a sentence.  *Cf. Garcia v. People*, 2022 CO 6, ¶ 41 (Because whether the movement of the victim "substantially increased the risk of harm to the victim" "is neither an element nor a legal definition of one of the statutory elements, a trial court does not err when it tenders second degree kidnapping jury instructions without this language." (quoting *People v. Harlan*, 8 P.3d 448, 477 (Colo. 2000))).  The fact of refusal is neither.  To be sure, refusal has administrative and evidentiary consequences.  *See* § 42-2-126(3)(c)(I), C.R.S. 2021 (an individual's driver's license shall be revoked for at least one year upon an administrative finding of refusal); § 42-4-1301(6)(d) (evidence of

refusal is admissible at a criminal trial). But it's not an element of DUI or DWAI (or any other crime Montoya was charged with). *See* § 42-4-1301(1)(a), (b) (elements of DUI and DWAI, respectively). Therefore, I think it's inadvisable to ask the jury to make a finding here.[1]

¶ 54   Second, even if it were appropriate to instruct the jury to make a refusal finding, nothing in the court's instructions tells the jury what it means for a defendant to "refuse" chemical testing. The first paragraph advises the jury of a driver's obligations under the Expressed Consent Statute, but it doesn't define or provide direction on the contours of refusal. And what it means for a driver to refuse or fail to cooperate in the taking or completion of a chemical test is a nuanced question. *See, e.g., Schulte v. Colo. Dep't of Revenue*, 2018 COA 140, ¶¶ 29-42 (applying five different

---

[1] I recognize that the supreme court in *Cox v. People*, 735 P.2d 153, 155 (Colo. 1987), held that it wasn't error for a trial court to instruct the jury that it could consider refusal when reaching its verdict on DUI and DWAI charges. But the instruction in *Cox* didn't ask the jury to make any findings on the issue of refusal. *Id.* The instruction at issue in *Cox* read as follows: "If a person refuses to submit to such chemical test, then the jury may consider such refusal along with all other competent evidence in determining the Defendant's guilt or innocence." *Id.*

30

appellate opinions when assessing whether the record supported an administrative law judge's finding of refusal).  The majority opinion distinctly illustrates the complexity of this determination.  *See supra* ¶¶ 10-11.

¶ 55    Finally, even if it were proper to ask the jury to make a refusal finding and the meaning of that term doesn't require a definition or further direction, nothing in the instructions the court gave advised the jury of the burden of proof that it was to apply when making this collateral finding of refusal.  The court did instruct the jury that the burden was on the prosecution to prove "all of the necessary elements" of a charged offense beyond a reasonable doubt.  *See* COLJI-Crim. E:03 (2021) ("The burden of proof is upon the prosecution to prove to the satisfaction of the jury beyond a reasonable doubt the existence of all of the elements necessary to constitute the crime charged.").  But, as noted before, refusal isn't an element of DUI or DWAI.  And nothing else in the instructions

31

guided the jury on the burden of proof applicable to its refusal finding.[2]

## II. How Can the Refusal Instruction the Trial Court Gave Be Fixed?

¶ 56 Identifying the serious problems with the instruction given at trial should come with the responsibility of suggesting a fix. Unfortunately, I don't have one that readily comes to mind (except, perhaps, faithfully cleaving to language that has previously survived appellate scrutiny). But even that has its perils. *Cf. Garcia v. People*, 2019 CO 64, ¶ 22 (even following the model instructions doesn't always provide "safe harbor that insulates instructional error from reversal"). The best I can do is offer an oft overlooked option for consideration on remand: don't give a refusal instruction at all. I offer this suggestion for several reasons.

¶ 57 First, the Expressed Consent Statute doesn't require a refusal instruction. That statute simply provides that if a defendant refuses or fails to cooperate with chemical testing, evidence of such

---

[2] Because I don't think it's proper to ask the jury to make a finding on the issue of refusal in this context, I don't reach — and offer no opinion regarding — what the proper burden of proof for a jury finding of refusal would be.

refusal *shall be admissible* at the defendant's criminal trial for DUI or DWAI:

> If a person refuses to take or to complete, or to cooperate with the completing of, any test or tests as provided in section 42-4-1301.1 and such person subsequently stands trial for DUI or DWAI, *the refusal to take or to complete, or to cooperate with the completing of, any test or tests shall be admissible into evidence at the trial,* and a person may not claim the privilege against self-incrimination with regard to admission of refusal to take or to complete, or to cooperate with the completing of, any test or tests.

§ 42-4-1301(6)(d) (emphasis added); *see also Cox v. People*, 735 P.2d 153, 159 (Colo. 1987) (noting that the effect of this statute "is to allow admission of evidence of refusal in every case without a judicial determination of relevancy on a case-by-case basis"). It doesn't say that the jury must be *instructed* that it may draw any particular inference. Indeed, the statute doesn't reference an instruction at all.

¶ 58    Second, no reported case holds that a refusal instruction is required or necessary. To be sure, it's well established that it isn't improper for a trial court to instruct a jury in a DUI or DWAI case that it may consider "refusal along with all other competent

33

evidence" in determining a defendant's guilt or innocence. *Cox*, 735 P.2d at 155; *see also, e.g.*, *People v. Mersman*, 148 P.3d 199, 201 (Colo. App. 2006) ("[I]t is proper to instruct a jury that it can consider a driver's refusal to take a blood or breath test, along with other evidence, in determining his or her guilt of driving under the influence."). But neither *Cox* nor its progeny stands for the proposition that such an instruction must or even should be given.

¶ 59    Third, courts don't generally ask juries to make predicate findings before they can consider evidence, as the trial court did here. Our law is replete with circumstances where there are factual predicates to the admission of evidence (even if we don't always think of them as such) — a defendant's confession must be freely and voluntarily given, a statement must satisfy a hearsay exception, and a document must be authentic, just to name a few. In all of those examples, it's the court and not the jury that makes the predicate finding. *See, e.g.*, *People v. Castro*, 159 P.3d 597, 600 (Colo. 2007) (voluntariness involves questions of fact to be decided by the trial court); *People v. Fuller*, 788 P.2d 741, 744 (Colo. 1990) (before admitting a hearsay statement, the trial court should establish that the statement satisfies the prerequisites to

admissibility); *People v. Crespi,* 155 P.3d 570, 573-74 (Colo. App. 2006) (whether a proper foundation for authentication has been established is a matter within the sound discretion of the trial court). In none of those examples — nor any others that come to mind — do we ask the jury to revisit the court's determination as a precondition to its consideration of the evidence.

¶ 60    Fourth, courts don't generally tell jurors that they *can* consider evidence for a particular purpose. *Cf. People v. Garcia,* 2021 COA 65, ¶ 46 ("[I]nstructions that emphasize specific evidence are generally disfavored.") (*cert. granted* Apr. 11, 2022). And when a court does instruct jurors that they can consider evidence for a specific purpose, it's almost always because their consideration of the evidence is *limited* to that identified purpose. *See, e.g., People v. Spoto,* 795 P.2d 1314, 1321 (Colo. 1990) (limiting instructions alleviate the risk that the jury will use testimony for a prohibited purpose). Under the Expressed Consent Statute, evidence of refusal isn't admitted for a limited purpose. *See* § 42-4-1301(6)(d) (providing that if a driver refuses a chemical test, "the refusal . . . shall be admissible into evidence at the trial"). And neither the

instruction given at trial nor the one authorized in *Cox* is a limiting instruction.

¶ 61    Simply put, a special instruction isn't required for the jury to draw — or for the prosecutor to highlight — reasonable inferences about a defendant's guilt or innocence of driving under the influence from evidence of the defendant's refusal.  *See Fitzgerald v. People*, 2017 CO 26, ¶ 21 (noting that "refusal is conduct that potentially shows a consciousness of guilt" (citing *Cox*, 735 P.2d at 158-59)); *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005) ("In closing argument to the jury, the prosecutor may argue all reasonable inferences from evidence in the record." (quoting ABA Standards for Crim. Just., Prosecution Function & Def. Function § 3-5.8(a) (3d ed. 1993))).

### III.    Conclusion

¶ 62    My note of caution is this: crafting a refusal instruction is a perilous endeavor, particularly when the fact of refusal is contested. Under such circumstances, not giving a refusal instruction at all should be on the table.  In my view, omitting such an instruction comports with the Expressed Consent Statute, doesn't impair the prosecutor's latitude to argue that the jury should draw an adverse

inference from the evidence of the defendant's refusal, and avoids the disfavored practice of giving instructions that highlight particular evidence.